RYAN A. SEMERAD, ESQ.
Wyoming State Bar No. 7-6270
FULLER & SEMERAD, LLC
242 South Grant Street
Casper, Wyoming 82601
307-265-3455
semerad@thefullerlawyers.com

JEFF B. VOCKRODT, ESQ.
(will seek admission *pro hac vice*)
jvockrodt@cm.law
ANNA BROOK
(will seek admission *pro hac vice*)
abrook@cm.law
CULHANE MEADOWS PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, TX 75240

*Attorneys for Plaintiff Wealthy Inc.*

# UNITED STATES DISTRICT COURT
# DISTRICT OF WYOMING

| | | |
|---|---|---|
| WEALTHY INC. | : | |
| | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. _____ |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OPTIMIZED LIFESTYLE LLC | : | |
| | : | |
| | : | |
| Defendant | : | |
| | : | |

## **COMPLAINT**

Plaintiff Wealthy Inc. ("Wealthy" or "Plaintiff"), by and through their undersigned counsel, Culhane Meadows PLLC and Fuller & Semerad, LLC, hereby file this complaint against Defendant Optimized Lifestyle LLC ("OL" or "Defendant") and, and in support thereof aver as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), § 1332 (diversity jurisdiction), § 1367 (supplemental jurisdiction) and under the Lanham Act, 15 U.S.C. §§ 1121(a) and 1125(a)(1)(B).

2. With respect to diversity jurisdiction, complete diversity of the parties exists.

3. First, Plaintiff is a Texas Corporation.

4. Second, Defendant is a Wyoming Limited Liability Company.  Upon information and belief, Defendant has two members— John Anthony Lifestyle LLC ("JAL") and Empowered Mind LLC ("EM").

5. Upon information and belief, JAL is a limited liability company that is solely owned and controlled by John Mulvehill.

6. Upon information and belief, John Mulvehill is a resident of Brazil.

7. Thus, JAL is a citizen of Brazil only.

8. EM is a Wyoming limited liability company.  Its articles of incorporation were filed with the Wyoming Secretary of State on August 6, 2021.

9. Upon information and belief, EM is solely owned and controlled by Alan Belkin.

10. Upon information and belief, Alan Belkin is a resident of Florida.

11. Thus, EM is a citizen of Florida only.

12. Because JAL, a citizen of Brazil, and EM, a citizen of Florida, are the only members of Defendant, Defendant is considered a citizen of Brazil and Florida. *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015)

13. Finally, the amount in controversy exceeds $75,000.

14. With respect to the state law claims, this court has related claim jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367.

15. This Court has personal jurisdiction over Defendant because Defendant is incorporated in Wyoming.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

## **PARTIES**

17. Wealthy is a corporation organized under the laws of the State of Texas and owned by Dale Buczkowski.

18. Mr. Buczkowski is a resident of Nevada.[1]

19. Neither Mr. Buczkowski nor Wealthy have any substantial connection to Wyoming.

20. OL is organized under the laws of Wyoming.

21. Upon information and belief, OL was formed on August 5, 2021.

22. Upon information and belief, OL's principal place of business in Casper, Wyoming.

23. Upon information and belief, OL was formed to conduct the business of JAL.

24. Mr. Mulvehill crated three websites while at JAL and before he formed OL:

- YouTube Channel called John Anthony Lifestyle, available at https://www.youtube.com/@JohnAnthonyLifestyle ("JAL YouTube Channel").

- Website with URL: "platinumdatingsystem.com" ("PDS Website").

- Website with URL: "johnanthonylifestyle.com" ("JAL Website").

---

[1] The parties in the Nevada Lawsuit, discussed below, have disputed Mr. Buczkowski's state of residence. Plaintiff believes that Mr. Buczkowski's residence is not relevant to jurisdiction here because Plaintiff is a corporation and its citizenship is determined solely by it state of incorporation and where its principal place of business is located (unliked, for example, a limited liability company). *See Grynberg v. Kinder Morgan Energy, L.P.*, 805 F.3d 901, 905–906 (10th Cir. 2015). Plaintiff further believes Mr. Buczkowski's residence is not relevant to any other issues in this lawsuit.

25. Upon information and belief, the control of the JAL YouTube Channel, PDS Website, and JAL Website has shifted from JAL to OL.

26. Upon information and belief, Mr. Mulvehill has retained control of the JAL YouTube Channel, PDS Website, and JAL Website through his position at OL.

## **NATURE OF LAWSUIT**

27. This is an action for false advertising under Section 43(a) of the Lanham Act arising from a series of videos made by Mr. Mulvehill between May 2020 and February 2022 that include several false statements of fact about Plaintiff and its owner Mr. Buczkowski, used by Defendant in its commercial advertising or promotion, that deceive or are likely to deceive in a material way in interstate commerce, and have caused competitive commercial injury to Plaintiff.

28. OL has direct liability for false advertising based on the JAL Video which it published on the JAL YouTube Channel from the time OL began operating the JAL YouTube Channel until the videos were taken down in February 2022.

29. This lawsuit is also an action for fraudulent transfer under Wyo. Stat. Ann. §§ 34-14-201 through 34-14-212, which is governed by the Uniform Fraudulent Transfer Act ("UFTA") based on Mr. Mulvehill's fraudulent creation of OL and transfer of the operating business of JAL into OL after becoming aware of his potential liability for false advertising and several torts under Nevada law when his collaborator Spencer Cornelia was sued in June 2021, in the case captioned *Wealthy, Inc et al. v. Spencer Cornelia et al.*, Case No.: 2:21-cv-01173-JCM-EJY (Nevada Lawsuit).

30. OL has successor liability under the UFTA for obligations incurred by Mr. Mulvehill & JAL predating OL's formation, including liability for false advertising beginning in May 2020 through the date OL began operating the JAL YouTube Channel, which is being pled in this lawsuit.

31. OL also has successor under the UFTA for obligations incurred by Mr. Mulvehill & JAL predating OL's formation that have been alleged in the Nevada Lawsuit, including several Nevada state law claims, e.g., defamation, which are not being pled in this lawsuit. Although the court granted a motion to dismiss for lack of personal jurisdiction in the Nevada Lawsuit, that decision is subject to appeal at the time this Complaint is being filed.

32. Mr. Mulvehill and Mr. Buczkowski have been competitors in the dating and lifestyle industry since Mr. Mulvehill entered the field in approximately 2013.

33. Mr. Buczkowski started his current company Wealthy in 2019, which is focused on real estate, investment, and business coaching and includes lifestyle and dating programs that compete directly with Mr. Mulvehill's business.

34. Shortly after Wealthy was formed in 2019, Mr. Mulvehill launched a series of videos aiming to harm Wealthy and promote his own business.

35. Mr. Mulvehill's first video aired in May 2020 on the JAL YouTube Channel ("First JAL Video"), and that video remained active on the JAL YouTube Channel until February 2022. This video included the following false statements that Wealthy's owner Mr. Buczkowski:

- fabricated his business skills/knowledge;

- laundered money;

- manufactured and/or sold illegal drugs;

- got Mr. Mulvehill arrested in 2013; and

- was kicked out of his former company RSD.

36. In December 2020 and February 2021, Mr. Mulvehill went on another YouTube channel owned by Spencer Cornelia, a Nevada resident, and made similar false statements, as well as claims promoting his own business, JAL. These videos included the following false statements that Wealthy's owner Mr. Buczkowski:

- lied about his educational achievement;

- laundered money;

- manufactured and/or sold illegal drugs;

- framed Mr. Mulvehill for his 2013 arrest in Las Vegas; and

- was involved in the death of the woman who was the alleged victim in the arrest of Mr. Mulvehill.

37. Wealthy and its founder Dale Buczkowski filed the Nevada lawsuit in June 2021 against Mr. Cornelia in Nevada District Court detailing Mr. Mulvehill's numerous false, defamatory, and misleading statements.

38. Upon information and belief, with full knowledge that he could be sued for defamation and false advertising, Mr. Mulvehill created OL in August 2021 and transferred substantially all of the productive assets from JAL into OL.

39. Upon information and belief, the transfer of the productive assets of JAL into OL was not for fair value and left JAL an effectively insolvent shell company with insufficient assets to satisfy any judgment based on the obligations incurred by Mr. Mulvehill while operating JAL.

40. Mr. Mulvehill continued to run his dating and lifestyle business through OL, including the JAL YouTube Channel which continued to air the First Video until it was taken down in February 2022 after Mr. Mulvehill received a subpoena in the Nevada Lawsuit.

## FACTUAL BACKGROUND

## WEALTHY AND DEREK MONEYBERG

41. Mr. Buczkowski graduated from the University of Chicago Booth School of Business with a Masters of Business Administration (MBA) degree in 2015. An image of his diploma is annexed as Exhibit A.

42. While at the Booth School of Business, Mr. Buczkowski earned the Dean's Prize for Building the Chicago Booth Brand. An image of the award trophy is annexed as Exhibit B. An image of the Chicago Booth School Dean (Sunil Kumar) presenting the award to Mr. Buczkowski is annexed as Exhibit C. A picture of the Assistant Dean (George Andrews) with Mr. Buczkowski celebrating his receiving the award is annexed as Exhibit D.

43. Mr. Buczkowski graduated with degree in business management and administration (BMA) from Bradley University with honors in 2005. An image of his academic achievement award from Bradley University is annexed as Exhibit E.

44. Mr. Buczkowski had previously served as an Executive Coach and member of the Board of Directors of Real Social Dynamics ("RSD"), the world's largest dating coaching company, since November 2003.

45. Mr. Buczkowski is the President and Co-Founder of Larson Consulting, founded in 2011, which is dedicated to helping leaders solve critical strategic issues, accelerate growth, and improve the reputation and brand of their organizations in the context of strongly held values.

46. Wealthy is a leading entrepreneurship, finance, business, real-estate, and self-improvement company owned and operated by Mr. Buczkowski, who operates the business under the federally registered trademark, Derek Moneyberg®.

47. Wealthy offers several training programs to its clients:

- Wealthy offers three entry level programs entitled Moneyberg® Mentoring, Markets Mastery, and Real Estate Riches. These programs focus on entrepreneurship, financial markets, and real-estate investing.

- Wealthy also offers its clients a program entitled Mastermind Network. This program provides a monthly coaching call and a forum for top students to network and exchange ideas in a high value environment.

- Wealthy also offers 1-ON-1 Training with Derek Moneyberg®, for well qualified applicants.

- Wealthy also offers live dating bootcamp programs that directly compete with OL's offering of dating bootcamp programs.

48. Wealthy actively markets its courses on various social media channels, including YouTube, LLC (Derek Moneyberg), Instagram (@derekmoneyberg), Facebook (@derekmoneyberg), Twitter (@derekmoneyberg), LinkedIn (Derek Moneyberg), Spotify (The Derek Moneyberg Podcast), and Apple Podcast (The Derek Moneyberg Podcast).

49. Wealthy's YouTube channel, Derek Moneyberg, has approximately 134 K subscribers, up from 23.7 K subscribers in June 2021, and about 3.3 million views, up from 1.2 million in June 2021, according to YouTube. Wealthy's YouTube channel targets an audience interested in self-improvement in the areas of entrepreneurship, finance, business, and real-estate.

50. Mr. Buczkowski is focused on growing his entrepreneurship, finance, business, and real-estate focused clientele through Wealthy and the Derek Moneyberg® brand.

51. Mr. Buczkowski continues to provide services to his base of over one hundred and fifty clients in the dating and lifestyle niche that he began developing while at RSD.

52. Several of Mr. Buczkowski's clients whom he began working with in the dating and lifestyle niche at RSD have continued to work with him and Wealthy in the areas of entrepreneurship, finance, business, and real-estate.

53. Many of Mr. Buczkowski's clients in the areas of entrepreneurship, finance, business, and real-estate were newly developed by Mr. Buczkowski under the Derek Moneyberg® brand, and did not previously work with Mr. Buczkowski.

## JOHN MULVEHILL (A.K.A. JOHN ANTHONY)

54. John Mulvehill is a dating and self-improvement coach who markets his services under the brand John Anthony Lifestyle, and goes by the name of John Anthony.

55. Mr. Mulvehill currently markets his services through OL, which is a company focused on his teaching of dating and lifestyle concepts aimed at men.

56. Mr. Mulvehill has acknowledged that he views RSD, with which Mr. Buczkowski has been associated, as a direct competitor of his.

57. Messrs. Buczkowski and Mulvehill met in 2013 through a mutual acquaintance who was Mr. Mulvehill's roommate at the time.

58. Upon information and belief, Mr. Mulvehill has had a personal vendetta against Mr. Buczkowski since an encounter the two had in Las Vegas one evening in May 2013.

59. Plaintiff Buczkowski and Mr. Mulvehill visited a Las Vegas nightclub that evening.

60. Later the same evening, Mr. Mulvehill was involved in an incident as a result of which Mr. Mulvehill, according to Las Vegas Township Justice Court records, eventually was arrested and charged with felony counts of: (1) kidnapping, 1st degree; (2) battery to commit mayhem/robbery/grand larceny; (3) kidnapping, 2nd degree; (4) coercion with force or threat of force; and (5) four separate misdemeanor counts of open/gross lewdness. A copy of the charging information for this incident is annexed as Exhibit F.

61. Mr. Mulvehill reached out to Mr. Buczkowski after Mr. Mulvehill's arrest requesting that Mr. Buczkowski testify on his behalf and against the female victim.

62. Mr. Buczkowski refused to return Mr. Mulvehill's calls and texts.

63. According to an article first published by the Daily Beast in 2015, available at https://www.thedailybeast.com/the-pickup-artist-too-sleazy-for-pickup-artists,

Mr. Mulvehill "pleaded to lesser charges of conspiracy to commit coercion and received a one-year suspended sentence, contingent upon the successful completion of impulse control counseling and a promise to stay off the Vegas Strip." A copy of the article is annexed as Exhibit G.

64. Mr. Mulvehill has since carried out a scorched earth smear campaign against Mr. Buczkowski and RSD, on the board of which Mr. Buczkowski previously served, releasing several critical videos on the JAL YouTube Channel.

## MR. MULVEHILL'S SMEAR CAMPAIGN
## AGAINST DEREK MONEYBERG

65. In May 2020, Mr. Mulvehill began to release a series of videos containing false statements about Plaintiff on the JAL YouTube Channel.

66. The initial video released on May 10, 2020 by Mr. Mulvehill achieved the most views of this series of videos critical of Plaintiff, reaching 18,430 by June 2020, and had a view count of over 21 K views before being taken down in approximately February 2022:

- Derek Moneyberg (RSD Derek) Exposed. Shady Criminal Past + Terrible Reviews + Fake Results, uploaded May 10, 2020, available at – https://youtu.be/cV478KH4fw0 ("First JAL Video").

67. These false statements include at least the following factual assertions that Mr. Buczkowski: (1) fabricated his business skills/knowledge; (2) laundered money; (3) manufactured and/or sold illegal drugs; (4) got Mr. Mulvehill arrested in 2013; and (5) was kicked out of his former company RSD.

68. The First JAL Video includes the following assertions that Mr. Buczkowski fabricated his business skills/knowledge:

- "Here's the nice presentation overview. We're going to cover his shady criminal past. We're going to go over his student review. These are screenshots. I like to cover a lot of objective stuff in these roasts. Not

Giving A S**t About Students, Ripping More People Off and his Future with RSD. As we'll see, he's leaving the company towards the end of this year in 2020. **Fabrication of Business Skills/Knowledge.** Comparison to Evil Eye Moody from Harry Potter. Female Opinion On This Fat Slob, and then My Connection To This Dumb F**k. These are nice little subjects to cover, lots of fun ahead." (Exhibit H, First JAL Video Tr. at 1.)

- "I said, 'Where did you get that?' He said that in a recent webinar, no boot camps after the end of 2020 and no longer be the RSD. Now, this Derek Moneyberg s**t. **Fabrication of Business Skills/Knowledge**. Look at what RSD Max did. RSD Max was someone who was with RSD, who was very good with social media marketing."  (Exhibit H, First JAL Video Tr. at 4.)

- "Now, closing thoughts. Do you want to follow a guy, and get advice from a guy who has a lengthy criminal past, who uses aliases and burner phones, who fully neglects students and doesn't give two s***s about them, who looks like a fat loser slob yet claims to be crushing the dating game, who tries to use bullying and high-pressure sales tactics to squeeze every penny out of you that he can, ***that fabricates skills and results to feed his fake image and sell more s**t***, and that girls do not respect or find attractive one bit?" (Exhibit H, First JAL Video Tr. at 4.)

69. The assertion that Mr. Buczkowski fabricated his business skills/knowledge is literally false and/or false by necessary implication.

70. Mr. Buczkowski obtained an MBA from the University of Chicago Booth School of Business in 2015.  See Exhibit A.

71. Mr. Buczkowski also received an award from the University of Chicago Booth School of Business entitled the Dean's Prize for Building the Chicago Booth Brand.  See Exhibits B–D.

72. The First JAL Video includes the following assertions that Mr. Buczkowski laundered money:

- "I know a lot of the guys in the internet marketing game. Max doesn't know two s***s about business. Now you have RSD Derek doing the same thing. 'I'm going to break away from RSD because I got bad PR. I'm going to be Derek Moneyberg. I'm going to teach you all the ins and outs of how to crush it in business.' **This f*****g idiot with his Larson Consulting, which seems like a front for potentially laundering money**, which I'll get into in my video at the end from a former video from the past, has shown no proof of his businesses succeeding or of his income." (Exhibit H, First JAL Video Tr. at 4.)

- I didn't even make a slide about this, **we also have Larson Consulting which is a front**. It's like he-- I don't know what my legal phrasing should be, yes, upstanding as f**k. Pretty shocking stuff. I know, I got to live through it. I got to spend $40,000 on legal fees and have my reputation destroyed on the internet, lose jobs, and have countless amounts of stress being brought to my life and my family's life. All over this stupid f**k. (Exhibit H, First JAL Video Tr. at 10.)

73. The assertion that Mr. Buczkowski engaged in money laundering is literally false and/or false by necessary implication.

74. The assertion that Mr. Buczkowski engaged in money laundering appears to be based on nothing other than wild speculation by Mr. Mulvehill.

75. The First JAL Video includes the following assertions that Mr. Buczkowski manufactured and/or sold illegal drugs:

- "**The properties were forfeitable because they were either purchased of proceeds from a drug crime or were used to facilitate the commission of a drug crime. This is RSD Derek for those of you that are not clear who we're referring to.** He's now going by Derek

Moneyberg. He's off now trying to teach you business ideas, scamming the s**t out of you. This guy is a total f*****g piece of s**t as we will see." (Exhibit H, First JAL Video Tr. at 2.)

- "We just covered a couple of his other arrests. **Now we're going into dealing with s**t from illegal drug sales**. Student Review, moving right along. His boot camp is total f*****g garbage. I paid $2,500 to sit in a f*****g hotel room for three nights. Absolute total waste of money. I was in Vegas a week before you got there because this was sent to me. The event was advertised as a three-day boot camp. Everyone met him in his hotel room at 8:00 PM on Friday, where he talked for 4 hours." (Exhibit H, First JAL Video Tr. at 2.)

- "'**United States government filed civil forfeiture actions against five properties alleging the properties were used to manufacture illegal drugs or purchased with proceeds from illegal drug sales**.' Pause this if you want to read the rest. '**The properties were forfeitable because they were either purchased with proceeds for a drug crime or were used to facilitate the commission of a drug crime.**' This goes on and on. I don't give a s**t. If you want to try to report this video, I will repost it. I don't care if you want to f*****g sue me. Come and f*****g sue me." (Exhibit H, First JAL Video Tr. at 9.)

76. The assertion that Mr. Buczkowski engaged in illicit drug manufacture and/or sale is literally false and/or false by necessary implication.

77. The assertion that Mr. Buczkowski engaged in illicit drug manufacture and/or sale appears to be based entirely on speculation by Defendant and Mr. Mulvehill about a prior litigation involving asset forfeiture of property owned by Mr. Buczkowski's deceased grandmother. In that case, Mr. Buczkowski temporarily served as the executor of the estate. The litigation in question was resolved without any finding of wrongdoing by Mr. Buczkowski following a decision by the

Court of Appeals for the Eighth Circuit which reversed a decision of the District Court striking claims by the estate as untimely, U.S. v. Real Properties Located at 7215 Longboat, 750 F.3d 968 (8th Cir. 2014).

78. Mr. Buczkowski has never been arrested for a drug crime, much less been charged with or convicted of a drug crime.

79. The First JAL Video includes the following assertions that Mr. Buczkowski got Mr. Mulvehill arrested in 2013:

- "If the pictures of Mr. Moneyberg come directly from his YouTube, it is covered under fair use. To err on the side of caution, the lawyer recommended that we do not use any s***head clips from his stupid videos. We have not used-- **Oh, and I also have a picture with him from back in 2013, the night he got me arrested.** That picture is of my own copyright." (Exhibit H, First JAL Video Tr. at 1.)

- "Now we're going to go into my connect action to this dumb f**k. **We're going to go over how the only arrest of my life happened to be when I hung out with this guy one-on-one**. We're going to get into how he had an alias and burner phones and all the shady stuff surrounding that, and also look into a little bit of his arrests. Bear with me as we cover that clip, and then we'll come back here to wrap things up and summarize with a conclusion. Here we go." (Exhibit H, First JAL Video Tr. at 7.)

- "I had heard that Derek liked to hang out with the top guys and see how they were in person. Maybe it was egotistical. It's probably extremely foolish. I agreed to hang out with this guy one-on-one. We're going to find out how that ended up. As I said here, I'd heard he was good at games, so I agreed to wing with him. **Now, night one out with Derek, I am arrested, and then he disappears.** All right? We're going to get into the details of that in a second." (Exhibit H, First JAL Video Tr. at 8.)

- There's his face. There he is. Nice, f*****g older-looking Quasimodo-type character who likes to wear flannel shirts opened up. Also has a gay voice, which I don't have an audio reproduction of. Here we are, best friends. Here we are, some more. Night one, can't make this up, a day before I move into my mansion, the ten students already signed up, and start my immersion program and start my company. **Quasimodo comes to town, who I barely know, and I'm arrested.** (Exhibit H, First JAL Video Tr. at 8–9.)

- "Now, here's some super shady things involving Derek. He only wanted to wing one-on-one. I had a lot of events friends in Vegas. Didn't want to meet them. 'Don't tell your friends.' Never explained that one. 'I'll explain later.' Never happened. **The girls that were in the group of my incident, my arrest, he wanted to approach them and he actually knew one of them.** That's interesting. After I was arrested, he never replied to calls or texts again from his f*****g burner number. He also called in the phone records that I obtained. He called and texted Manwhore and Tyler [unintelligible 00:21:33] in a bunch right after the arrest. At the time we were hanging out, he used a fake alias and a burner phone. I can go on and on. I have his full phone records, I have records of his meetings, records of meeting these girls. I'm putting that all together in a separate suit. I don't care about revealing any information right now. Facts are facts." (Exhibit H, First JAL Video Tr. at 9.)

80. The assertion that Mr. Buczkowski framed Mr. Mulvehill for Mr. Mulvehill's 2013 arrest involving four felony and four misdemeanor charges is literally false and/or false by necessary implication.

81. This statement appears based solely on speculation by Mr. Mulvehill.

82. The First JAL Video includes the following assertions that Mr. Buczkowski was kicked out of his former company RSD:

- "One halfway in, I was like, 'Well, maybe that's what this is. Maybe they just want to see me foul on the first night.' This is RSD, keep in mind. RSD Derek, the man we're discussing here, teaches these programs under the RSD brand. **He was not showing his face for the longest time and now he's emerged, showing his face to Derek Moneyberg because he's having to leave RSD this year due to bad PRs we'll cover**. Now he's come out of the shadows to expose his fat bloated face." (Exhibit H, First JAL Video Tr. at 2.)

- That's how we had that with the eye patch, this f*****g Evil Eye Moody or whatever, using a potion to look like a guy to try and infiltrate the good guys. This is exactly what RSD Derek is doing. He is fat and out of shape and out of control. You'll see what this girl has to say about him. He is not attractive. This is not a f*****g ladies' man or some business mentor. This is a scam artist, a fat piece of s**t f**k that is trying to just hustle everyone and steal money. **He's being kicked out of RSD, and now he's going to go off to try to build this business coaching empire**. (Exhibit H, First JAL Video Tr. at 4.)

83. The assertion that Mr. Buczkowski was kicked out of his former company is literally false and/or false by necessary implication.

84. Mr. Mulvehill released several other videos critical of Plaintiff. However, the majority of those videos had received just under six thousand views as of June 2021, including the following videos:

- "DEREK MONEYBERG ROAST REINSTATED!!!!," uploaded Jul 9, 2020, available at – https://youtu.be/S1_9vPRglI4 ("Second JAL Video").

- "Derek Moneyberg (RSD Derek) -- Biggest SCAMMER On Earth," uploaded September 15, 2020, available at – https://youtu.be/FEhqQHntw_M ("Third JAL Video").

- "Derek Moneyberg (RSD Derek) Scam Program Reviews," uploaded Nov. 24, 2020, available at – https://youtu.be/Pwp6rj1rR1g ("Third JAL Video").

- "Derek Moneyberg Scam Program Review (RSD Derek Review)," uploaded Dec. 22, 2020, available at – https://youtu.be/gCog2kw6kwo ("Fourth JAL Video").

- "How Derek Moneyberg Scammed A Guy For 35k | Student Almost Became Homeless (RSD Derek Exposed)," uploaded Dec. 28, 2020, available at – https://youtu.be/8tQx4fn1_cA ("Fifth JAL Video").

- "Derek Moneyberg Racism Against Blacks EXPOSED (with multiple sources) | Brandon Carter Derek Collab?," uploaded Jan. 10, 2021, available at – https://youtu.be/iy8-wsBGrk0 ("Sixth JAL Video").

- "Derek Moneyberg Instagram FAKE FOLLOWERS EXPOSED (RSD Derek Exposed)," uploaded Feb. 2, 2021, available at – https://youtu.be/eKzr8-qfK2w ("Seventh JAL Video").

- "Derek Moneyberg's 3 Busted Girlfriends REVEALED By Insider!," uploaded Mar. 17, 2021, available at –https://youtu.be/MMdEMam7-KY ("Eighth JAL Video").

- "Derek Moneyberg Instagram REMOVED!! Fake Followers PUNISHED LMAOOO | RSD Derek," uploaded Feb. 10, 2021, available at  – https://youtu.be/qbqOkKQZ9h8 ("Ninth JAL Video").

- "Showing 3 Death Threats Ordering Me to Delete Derek Moneyberg Videos," uploaded May 13, 2021, available at  – https://youtu.be/pBZw_2qRET4 ("Tenth JAL Video").

85. The First through Tenth JAL Video were taken down shortly after Mr. Mulvehill received a subpoena dated February 14, 2022 to obtain account information for the JAL YouTube Channel in the Nevada Lawsuit.

## SPENCER CORNELIA

86. Spencer Cornelia operates an eponymous YouTube channel with approximately 150 K subscribers and over 13.8 million views, according to YouTube, where he publishes YouTube videos on a variety of topics including real-estate investing, business, and health & fitness.

87. Mr. Cornelia also publishes a series of videos entitled "Authentic or Charlatan" in which he asserts he seeks to expose "fake gurus on social media."

88. Mr. Cornelia collaborated with Mr. Mulvehill to produce a series of YouTube videos in the "Authentic or Charlatan" series that target Wealthy's business, Mr. Buczkowski, and the Derek Moneyberg® brand with false statements that are at the core of this lawsuit.

89. On December 13, 2020 Mr. Mulvehill and Mr. Cornelia began communicating, and Mr. Mulvehill proposed being interviewed on Cornelia's channel about Plaintiff. (Exhibit I, COR000007).

90. In planning the interviews, Mr. Cornelia informed Mr. Mulvehill that he was located in Las Vegas, Nevada and was on Pacific Standard Time (PST) (Exhibit I, COR000009).

91. Mr. Mulvehill asked Mr. Cornelia if he carried insurance, to which Mr. Cornelia confirmed he did not (Exhibit I, COR000008).

92. Mr. Mulvehill asked Mr. Cornelia how "how does it work with shouting out my channel or promo stuff," to which Mr. Cornelia replied "That's what I was thinking." (Exhibit I, COR000010).

## MR. MULVEHILL'S VIDEOS MADE IN CONJUNCTION WITH SPENCER CORNELIA

93. Between December 2020 and February 2021, Mr. Mulvehill, in collaboration with Mr. Cornelia, produced at least two videos released on Mr. Cornelia's

YouTube channel containing false statements about Mr. Buczkowski and the Derek Moneyberg® brand:

- "Authentic or Charlatan: Derek Moneyberg | RSD Derek", uploaded December 19, 2020, available at – https://youtu.be/47X1P03F-ls – (approximately 30.2 K views as of June 7, 2021) ("First Cornelia Video"); and

- "Derek Moneyberg - Fake Guru?", uploaded February 19, 2021, available at – https://youtu.be/hg44-wFMaQg – (approximately 15.2 K views as of June 7, 2021) ("Second Cornelia Video").

94. The First and Second Cornelia Videos involve Mr. Cornelia ("[SC]") interviewing Mr. Mulvehill ("[JM]").

95. The First and Second Cornelia Videos include false statements which are neither matters of opinion nor based on disputed anonymous accounts of potential witnesses, but are unqualified and provably false statements of fact. These statements which made by Mr. Mulvehill in the First and Second Cornelia Videos and published by Mr. Cornelia are among the subjects of this lawsuit.

96. These false statements include at least the following factual assertions that Mr. Buczkowski: (1) lied about his educational achievement; (2) laundered money; (3) manufactured and/or sold illegal drugs; (4) framed Mr. Mulvehill for his 2013 arrest in Las Vegas, leading to four felony and four misdemeanor charges; and (5) was involved in the death of the woman who was the alleged victim in the arrest of Mr. Mulvehill.

97. On information and belief, Mr. Mulvehill first made each of these false statements to Mr. Cornelia before and/or during their recording of the First and Second Cornelia Videos, and prior to the publication of those videos with the reasonable expectation that Mr. Cornelia would publish those videos on his YouTube channel.

98. The First and Second Cornelia Videos include the following assertions that Mr. Buczkowski lied about his educational achievement:

- "[JM:] I'm Derek Moneyberg, I have this University of Chicago degree OK which is not even true . . . " (Exhibit J, First Cornelia Video Tr. at 4:11–13).

- "[JM:] Yeah, he also like even his credentials, like someone said in one of the YouTube comments they provided proof that like that he never went to, like, you know, he never attended Chicago Business School, he did like some kind of online thing." (Exhibit K, Second Cornelia Video at 13:3–8).

- "[JM:] He just repackaged content, and then made it out, he made himself out to be some kind of genius because he studied business but he doesn't have a real . . . uh, he never actually went to University of Chicago." (Exhibit K, Second Cornelia Video at 24:13–18).

- "[JM:] He's always saying like, well I have this Ivy League degree and he didn't attend Chicago Business School, some online thing." (Exhibit K, Second Cornelia Video at 37:18–21).

99. The assertion that Mr. Buczkowski lied about his level of educational achievement is literally false and/or false by necessary implication.

100. Mr. Buczkowski obtained an MBA from the University of Chicago Booth School of Business in 2015. *See* Exhibit A.

101. Mr. Buczkowski also received an award from the University of Chicago Booth School of Business entitled the Dean's Prize for Building the Chicago Booth Brand. *See* Exhibits B–D.

102. The Second Cornelia Video includes the following assertions that Mr. Buczkowski laundered money:

- "[JM:] He has listed like that he had a business called like Larson Consulting which, which has like no you know substance behind it online,

but it looks very well like it could be a front. [SC:] Yeah the address is right down the street from my house here too in Vegas. [JM:] It looks, it looks very well it could be a front for laundering money." (Exhibit K, Second Cornelia Video at 10:9–19).

103.   The assertion that Mr. Buczkowski engaged in money laundering through his Larson Consulting business literally false and/or false by necessary implication.

104.   The assertion that Mr. Buczkowski engaged in money laundering appears to be based on nothing other than wild speculation by Mr. Mulvehill.

105.   The Second Cornelia Video includes the following assertions that Mr. Buczkowski manufactured and/or sold illegal drugs:

- "[SC:] That's shady yeah so the next note on my notes is the drug house. So you believe, well I guess with public record. He must have been running a drug operation, if it's a house tied to him, it was a house purchased using drug money. Is there any reason to believe that it was him running a drug operation. Do you think that's how he made his money. [JM:] I don't I don't know the details. I know, I know he was. He has listed like that he had a business called like Larson Consulting which, which has like no you know substance behind it online, but it looks very well like it could be. [SC:] Yeah the address is right down the street from my house here too in Vegas. [JM:] It looks, it looks very well it could be a front for laundering money. " (Exhibit K, Second Video at 10:1–19).

- "[JM:] He has like a lengthy arrest record where he was involved with, you know property forfeiture for manufacturing illegal drugs, for battery, all kinds of ... [SC:] it's public record too like it's known it's public. [JM:] Yeah, yeah and yeah and he's tried to hide all of it." (Exhibit K, Second Video at 3:5–15).

106.   The assertion that Mr. Buczkowski engaged in illicit drug manufacture and/or sale literally false and/or false by necessary implication.

107.   The assertion that Mr. Buczkowski engaged in illicit drug manufacture and/or sale appears to be based entirely on speculation by Mr. Mulvehill about a prior litigation involving asset forfeiture of property owned by Mr. Buczkowski's deceased grandmother, in which Mr. Buczkowski temporarily served as the executor of the estate. The litigation in question was resolved without any finding of wrongdoing by Mr. Buczkowski following a decision by the Court of Appeals for the Eighth Circuit which reversed a decision of the District Court striking claims by the estate as untimely, *U.S. v. Real Properties Located at 7215 Longboat*, 750 F.3d 968 (8th Cir. 2014).

108.   Mr. Buczkowski has never been arrested for a drug crime, much less charged with, or convicted of a drug crime.

109.   The First and Second Cornelia Videos include the following assertions that Mr. Buczkowski framed Mr. Mulvehill for his 2013 arrest in Las Vegas, leading to four felony and four misdemeanor charges:

- "[JM:]That's why I don't give a f**k I'm saying all this stuff, they came out to me trying to set me up for an arrest and pass the pass which we'll discuss in another video that m****rf***r." (Exhibit J, First Video at 13:24–14:2).

- "[JM:] I've never been accused or charged with rape that situation with Derek did not involve any sex in the case or any kind of rape accusation. So, you know, like, it's very, very frustrating that they'll play like as low and dirty as they possibly can. Even to the point of setting people up for arrests, even in the point of using intimidation and bullying and threats, and all this stuff." (Exhibit K, Second Video at 19:13–21).

- "[JM:] Yeah, I actually got arrested. My only time I've ever been arrested in my life was hanging out with this m****rf***r one on one, okay he is like one of the worst human beings I've ever met. I didn't know at the time, but he was using aliases, okay. His real name is Dale Buczkowski.

He goes by the alias, he was going by the alias RSD Derek had his face hidden everything, we can show you. I'll send you a picture of when he came to visit me in Vegas, basically I got a text and said, Hey, I'm coming to Vegas. Don't, don't let anyone know I'm in town, I'll explain later, okay never explained, without going into all the details of what happened, you know, it's, it's very obvious that he was involved there." (Exhibit K, Second Video at 2:14–3:4).

- "[SC:] At the time of your arrest for a guy that's been in this dating world for so long you've had basically one night, that ended in an arrest and it happened to be with Derek, or Dale is his real name. [JM:] And were one-on-one as well. [SC:] You were one-on-one and there I know there was a lot of shady stuff too where he disappeared. He changed his number or something, and then it's like he's your friend he's hanging out with you and you get arrested and then he's gone. [JM:] He was using a burner phone, and he was using an alias at that time. And he claimed to not know the girls that we approached, and then it turns out that one of the main girls in the group was working like a block from where he lives in Chicago, and then that girl ended up dead." (Exhibit K, Second Video at 8:21–9:16).

110. The assertion that Mr. Buczkowski framed Mr. Mulvehill for Mr. Mulvehill's 2013 arrest involving four felony and four misdemeanor charges is literally false and/or false by necessary implication.

111. This statement appears based solely on speculation by Mr. Mulvehill.

112. The Second Cornelia Video includes the following assertions that Mr. Buczkowski was involved in the death of the woman who was the alleged victim in the arrest of Mr. Mulvehill:

- "[JM:] That girl a 28 year old, living in Las Vegas who's like the primary witness in the case ended up dead, and I couldn't find the cause of death I

searched for it. 28 doesn't make much sense. [SC:] Wow, that was really bizarre. [JM:] That was the link to him." (Exhibit K, Second Video at 9:16–24).

- In reply to a comment on the Second Video's YouTube page stating the following: "'And then that girl ended up dead' Whoa that escalated quickly. RIP"; Mr. Cornelia stated "looked up the women in Clark County records and she definitely passed. Tried to find the cause of death but they required a lawyer's consent in order to attain those documents."

113.   The assertion that Mr. Buczkowski was involved in the death of the woman who was the alleged victim in the arrest of Mr. Mulvehill for four felony and four misdemeanor charges is literally false and/or false by necessary implication.

114.   Mr. Buczkowski did not know the woman before the night in question, and did not have any further contact with the woman afterward.

115.   The assertions that Mr. Buczkowski (a) framed Mr. Mulvehill for his 2013 arrest and (b) was involved in the death of the alleged victim appear to have been made by Mr. Mulvehill in an effort to absolve himself for his own actions in connection with which he was charged by the authorities with (1) kidnapping, 1st degree; (2) battery to commit mayhem/robbery/grand larceny; (3) kidnapping, 2nd degree; (4) coercion with force or threat of force; and four separate misdemeanor counts of open/gross lewdness.

116.   In addition to the above false statements, Mr. Mulvehill made several additional statements that were asserted to be made by former clients and/or former colleagues of Plaintiff to Mr. Mulvehill, and which Mr. Mulvehill relayed to Mr. Cornelia.

117.   These additional statements are also false, defamatory and/or misleading, and which, even if they were first uttered by third parties, were published by Defendant in a manner that is at least misleading, if not false and defamatory in their own right.

-24-

118.   These additional statements include, among others, assertions that Mr. Buczkowski (1) engaged in illegal activity in helping his clients obtain credit; (2) did not author any of his own content; and (3) coerced his clients to provide testimonials.

119.   These additional statements were provided without any context and were made to seem more credible due to the false and defamatory statements discussed above, namely the assertions that Mr. Buczkowski (1) lied about his educational achievement; (2) laundered money; (3) manufactured and/or sold illegal drugs; (4) framed Mr. Mulvehill for his 2013 arrest in Las Vegas, leading to four felony and four misdemeanor charges; and (5) was involved in the death of the woman who was the alleged victim in the arrest of Mr. Mulvehill.

120.   Mr. Mulvehill's statements about Plaintiff in the First and Second Cornelia Videos and his conversation with Mr. Cornelia in the lead up to making those videos further demonstrate his reckless disregard for the truth, and actual malice.

121.   Mr. Mulvehill's statements regarding Mr. Buczkowski, Wealthy and the Derek Moneyberg® brand are full of vitriolic language, including his concluding remarks on the First Cornelia Video in which Mr. Mulvehill gestured toward his fist and stated about Mr. Buczkowski: "This is what that m****rf****r needs right in his m****rf****n' nose the brass knuckles." (First Cornelia Video at 18:50–18:54)

122.   Mr. Mulvehill's reckless disregard for the truth is demonstrated by his failure to properly investigate the charges he made, his motivation to compete with Mr. Buczkowski in the dating and lifestyle niche, his anger at Mr. Buczkowski for not testifying on his behalf regarding Mr. Mulvehill's 2013 arrest involving four felony and four misdemeanor charges, and by Mr. Mulvehill's vitriolic language throughout the First and Second Cornelia Videos.

123.  Mr. Mulvehill's remarks under the circumstances noted above, and his collaboration with Mr. Cornelia which foreseeably led to Mr. Cornelia publishing the videos on his own channel, exhibited negligence and/or reckless disregard for the truth.

124.  The First through Tenth JAL Videos that Mr. Mulvehill published on his own YouTube channel, The John Anthony Lifestyle contain similar false and defamatory statements against Plaintiff.

125.  Defendant promoted its services on Mr. Cornelia's channel as shown by the following passages:

- "[JM:] Very much appreciate it. Yeah, for those of you that want real dating advice, John Anthony Lifestyle, on YouTube, Platinum dating system as I mentioned earlier ..." (Exhibit J, First Video at 18:16–19).

- "[SC:] Okay, but, but yeah. Thanks everyone for watching. Thanks John for coming on. [JM:] Yeah, thanks for having me. So yeah, check out John Anthony Lifestyle YouTube, and platinum dating system dot com. I've got a whole ton of free content on YouTube as well to get your feet wet with the dating stuff that's very real and practical advice. So, but yeah, Thanks for having me. It was fun." (Exhibit K, Second Video at 42:18–43:3).

126.  Mr. Mulvehill further promoted his services by requesting that Mr. Cornelia provide links his videos to John Anthony Lifestyle's website, YouTube channel, and the program entitled "Platinum Dating System."

127.  Defendant competes directly with Mr. Buczkowski in providing dating and lifestyle advice, and directly with Wealthy and the Derek Moneyberg® brand in the area of lifestyle improvement.

128.  Defendant competes indirectly with Wealthy and the Derek Moneyberg® brand in that many clients interested in the dating and lifestyle improvement

niches tend to overlap with clients interested in the entrepreneurship, finance, business, and real-estate niches.

129.    Mr. Mulvehill greatly expanded his reach through his collaboration with Mr. Cornelia, which Mr. Mulvehill acknowledged in the First Cornelia Video, stating: "But yeah, I really appreciate you bringing me on here you have more reach than my channel ... I like that you're, you're going to take these guys on, so yeah, ... I definitely go more head on, you're more objective and s**t, and explore both sides there's no other side here." (Exhibit J, First Cornelia Video at 20:20–21:22).

130.    Plaintiff has suffered significant harm as a result of Defendant's false statements due to the nature of the false assertions involving deceit and illegal activity.

131.    Plaintiff has suffered significant harm as a result of Defendant's false statements through verbal and written cancellations, and declination of contracts for services.

132.    Plaintiff observed shortly after the release of the First Cornelia Video, a significant loss in clients resulting in lost revenue on the order of $5.3 million in total lifetime value of those clients.

133.    Mr. Mulvehill in the Second Cornelia Video admits that Plaintiff's clients pay up to $75,000 per program for Wealthy's 1-on-1 coaching:

- "[JM:] So even as like a $75,000 weekend training with him personally, for a weekend . . . [SC:] that might be the most expensive fake guru course." (Exhibit K, Second Video at 3:25–4:5).

- "[SC:] You mentioned earlier 75,000 for a business training like I mean dude, you better be a VC with connections in Silicon Valley. [JM:] A weekend, that's for a weekend, and it's funny because I don't really watch much of his videos." (Exhibit K, Second Video at 21:4–12).

- "[SC:] When I see Derek Moneyberg, I'm like, wait a second, and I rarely comment on people's physical appearance, I think that's a low blow, but I think in this case, it is fair, when you're trying to charge 75,000 for a business course and you dress like a bum. Your hair is like hideous, and he just, he does not present himself as what he is trying to be the image he's trying to portray." (Exhibit K, Second Video at 22:9–15).

- "[JM:] So, I can teach them like an hour. So, you know, if they're just, they're just really like upping the upping the stakes on the scamming. Why not, you know, why not charge 75k for a weekend, why not. [SC:] If so, if you're a sociopath, and you have no empathy, why not charge the most if people want to pay it, why not, but that's the problem is these people have a certain mix of personality traits that form this concoction of, I don't want to say, evil, but in a way it is like you're just taking people's money and not delivering at all." (Exhibit K, Second Video at 40:17–41:3).

134. Further, the false statements in the videos have been repeated by those seeking to spread negative commentary about the Plaintiff. The First Cornelia Video was posted in a comment on an October 22, 2020 Facebook Post on the Derek Moneyberg® page advertising One-on-One consulting calls, where the commenter stated: "For anyone who's looking to be a victim of Dale Buczkowski (aka Derek Moneyberg), please watch this first - https://youtube/watch?v=47X1P03F-ls." A copy of this comment is annexed as Exhibit L.

135. Since the Mr. Mulvehill and Mr. Cornelia's publication of these videos, Plaintiff has received reports from their clients and potential clients that they have been contacted on Instagram by accounts with zero posts or followers that repeat the false assertions published by Defendant. A copy of a comment by such an account named "dale_buczkowski" is annexed as Exhibit M.

136.   On information and belief, images widely published by Defendant as the thumbnail and main images for the First and Second Cornelia Videos have been used by at least one account on Twitter entitled "Derek Moneyberg Hate Account" at the "@moneyberg_hate" Twitter address, which was created on April 2021. A copy of the Derek Moneyberg Hate Account showing this image is annexed as Exhibit K. A copy of the thumbnail images used in the First and Second Cornelia Videos is annexed as Exhibit N.

137.   Mr. Buczkowski grew up in difficult circumstances. He has spent much of his adult life distancing himself from the criminal environment of his childhood, where both his father and his uncle were convicted and incarcerated for drug-related crimes.

138.   A large part of improving his life and distancing himself from his childhood environment involved achieving great academic success, including earning an MBA from the prestigious Chicago Booth School of Business and an undergraduate degree from Bradley University with academic honors.

139.   A large part of the brand of Wealthy involves instructing its clients on how to overcome adverse circumstances, and includes references to Mr. Buczkowki's own life experiences.

140.   The Mr. Mulvehill's false statements about Mr. Buczkowski's level of educational achievement and involvement with illegal activities seriously undermines the Wealthy brand in the eyes of its customers, clients and prospects.

## **CLAIMS FOR RELIEF**

## **AS AND FOR A FIRST CLAIM**

### **UNFAIR COMPETITION AND FALSE ADVERTISING UNDER THE LANHAM ACT, 15 U.S.C. § 1125 *et seq.***

141.   Plaintiff incorporates the preceding paragraphs as though set forth at length.

142.   The statements made and published by Defendant and set forth above were literally false or false by necessary implication.

143.   Defendant's publication of false statements regarding Mr. Buczkowski, the Derek Moneyberg® brand and Wealthy's products and services, while praising the products, programs, and plans with which Defendant is affiliated and/or receive compensation from, constitutes unfair competition and/or false advertising.

144.   The social media channels of Defendant and Mr. Cornelia purport to serve as an independent review that provides viewers with an objective resource, but actually are conduits for the promotion of products, programs, and plans with which Defendant is affiliated and/or from which it receives compensation.

145.   Plaintiff and Defendant compete with each other through the lifestyle self-improvement niche.

146.   Plaintiff and Defendant conduct live dating bootcamp programs and compete with each other for clients of these programs.

147.   In promoting those other products, programs, and plans, and disparaging Mr. Buczkowski, the Derek Moneyberg® brand and Wealthy's products and services, Defendant is making false and misleading statements about Wealthy's products and services, including but not limited to the statements alleged herein.

148.   Defendant's false statements are material, in that they deceive, and are likely to deceive, customers and potential customers of Plaintiff and adversely influence their purchasing decisions.

149.   Defendant's false statements were made on the internet and published to tens of thousands of potential customers throughout the United States and beyond, and therefore were made in interstate commerce.

150.   Defendant's false statements are likely to cause and have caused competitive commercial injury to Plaintiff, including the lost sales mentioned herein.

151.   Defendant's acts constitute willful, deliberate, and false representations of fact as to the nature and characteristics of Wealthy's services in violation of 15 U.S.C. § 1125(a)(l)(B).

## AS AND FOR A SECOND CLAIM

## FRAUDULENT TRANSFER

152.   Mr. Mulvehill transferred assets from JAL to OL in 2021 with actual intent to hinder, delay or defraud Wealthy's claims for defamation and false advertising that were evident when the lawsuit against Mr. Cornelia was filed. Relevant to Mr. Mulvehill's intent:

- Mr. Mulvehill, upon information and belief, remained an insider in OL, the surviving corporation.

- Mr. Mulvihill, upon information and belief, retained possession and control of the JAL property transferred to OL, including non-tangible assets such at the JAL YouTube Channel, JAL Website, and PDS Website.

- Mr. Mulvehill, upon information and belief, did not inform his new business partner of his potential liability for the videos he made at the time OL was formed.

- Upon information and belief, the transfer to OL included substantially all of the income-earning assets of JAL.

- Upon information and belief, the value of consideration received by JAL was not reasonably equivalent to the value of the assets transferred or the amount of obligation incurred.

- Upon information and belief, the JAL entity became effectively insolvent upon transfer of its assets to OL given the liability incurred in releasing the videos; and

- The transfer happened shortly after the Cornelia videos were launched and Mr. Cornelia was sued.

153.    In addition to the above, the OL transaction qualifies as fraudulent under the UFTA because without JAL receiving a reasonably equivalent value in exchange for the transfer or obligation, Mr. Mulvehill:

- upon information and belief, engaged in a business transaction where the remaining assets of JAL were unreasonably small in relation to the business transaction; and/or

- upon information and belief, intended to incur, or believed or reasonably should have believed that the JAL would incur, debts beyond the ability of JAL to pay them as they became due.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiff prays for relief as follows:

1.    For a declaratory judgment that:

   a. Defendant engaged in false advertising in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125 *et seq*.;

   b. OL was formed as a fraudulent transfer under Wyoming Statute § 34-14-201 through 34-14-212 and therefore has successor liability relative to JAL and Mr. Mulvehill;

2.    That the Court attach the fraudulently transferred assets including the JAL YouTube Channel, JAL Website, and PDS Website, and enjoin further transfer of assets from JAL and/or OL.

3.    That the Court enter judgment against Defendant that acts it committed as set forth in this Complaint were willful, making this an exceptional case;

4.      That the Court issue a preliminary and permanent injunction enjoining and restraining Defendant and their agents, servants, employees, successors, assigns, and all other persons acting in concert or in conspiracy with or affiliated with Defendant, from engaging in false advertising concerning Plaintiff;

5.      That the Court enter judgment against Defendant for compensatory, consequential, and/or incidental damages in an amount not less than Six Million Dollars ($6,000,000.00);

6.      That Defendant be ordered to account for and disgorge to Plaintiff all amounts by which Defendant have been unjustly enriched by reason of the unlawful acts complained of herein;

7.      That Plaintiff be awarded exemplary or punitive damages against Defendant in an amount appropriate to punish Defendant and to make an example of Defendant to the community;

8.      That Plaintiff be awarded an amount sufficient to reimburse Plaintiff for the costs of corrective advertising;

9.      That Plaintiff be awarded pre-judgment interest on all appropriate damages;

10.     That Plaintiff be awarded reasonable attorneys' fees and costs incurred in this action; and

11.     For such other and further relief at law or in equity which the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Respectfully submitted this 4th day of August, 2023.

By: */s/Ryan A. Semerad*

RYAN A. SEMERAD, ESQ.
Wyoming State Bar No. 7-6270
FULLER & SEMERAD, LLC
242 South Grant Street
Casper, Wyoming 82601
307-265-3455
semerad@thefullerlawyers.com

JEFF B. VOCKRODT, ESQ.
(will seek admission *pro hac vice*)
jvockrodt@cm.law
ANNA BROOK
(will seek admission *pro hac vice*)
abrook@cm.law
CULHANE MEADOWS PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, TX 75240

*Attorneys for Plaintiff Wealthy Inc.*