RYAN A. SEMERAD, ESQ.
Wyoming State Bar No. 7-6270
FULLER & SEMERAD, LLC
242 South Grant Street
Casper, Wyoming 82601
307-265-3455
semerad@thefullerlawyers.com

Jeffrey B. Vockrodt, Esq. (*pro hac vice*)
jvockrodt@cm.law
Anna Brook, Esq. (*pro hac vice*)
abrook@cm.law
CM LAW PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, TX 75240

*Attorneys for Plaintiff Wealthy Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | | |
|---|---|---|
| WEALTHY INC. | : | |
| | : | |
| Plaintiff | : | CASE NO. 23-cv-00141-ABJ |
| v. | : | |
| | : | |
| OPTIMIZED LIFESTYLE LLC | : | |
| | : | |
| Defendant | : | |

**PLAINTIFF WEALTHY INC.'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**I. INTRODUCTION** ................................................................................................................ 1

**II. STATEMENT OF FACTS** ................................................................................................. 1

**III. LEGAL STANDARD** ........................................................................................................ 5

    **A. SUMMARY JUDGMENT** ....................................................................................... 5

    **B. UNIFORM FRAUDULENT TRANSFER ACT** ..................................................... 6

**IV. ARGUMENT** ....................................................................................................................... 7

    **A. JAL FRAUDULENTLY TRANSFERRED ASSETS TO OL** ................................ 7

    **B. OL SHOULD BE ENJOINED FROM FURTHER TRANSFERING ASSETS** ..................................................................................................................... 11

**V. CONCLUSION** .................................................................................................................. 12

# **TABLE OF AUTHORITIES**

### CASES

*Adler v. Wal-Mart Stores, Inc.*,
  144 F.3d 664 (10th Cir. 1998) .................................................................................................. 5

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .............................................................. 5

*Dye v. Bonar (In re Bonar)*,
  Nos. 2:23-bk-11181-ER, 2:23-ap-01139-ER, 2023 Bankr. LEXIS 2119 (Bankr. C.D. Cal. Aug. 28, 2023) ................................................................................................................................. 10

*In re Estate of Reed*,
  566 P.2d 587 (Wyo. 1977) ................................................................................................. 8, 10

*Land O'Lakes, Inc. v. Schaefer*,
  3 F. App'x 769 (10th Cir. 2001) ................................................................................. 5, 6, 7, 10

*Lynch v. Barrett*,
  703 F.3d 1153 (10th Cir. 2013) .................................................................................................. 5

*Mane FL Corp. v. Beckman*,
  355 So. 3d 418 (Fla. Dist. Ct. App. 2023) ............................................................................ 8, 10

*Matsushita Elec. Indus. Co. v.Zenith Radio Corp.*,
  475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) .............................................................. 5

*Murray v. City of Sapulpa*,
  45 F.3d 1417 (10th Cir. 1995) .................................................................................................... 5

*Payne v. Gilmore*,
  382 P.2d 140 (Okla. 1963) ........................................................................................................ 7

*Taylor v. Rupp (In re Taylor)*,
  133 F.3d 1336 (10th Cir. 1998) .................................................................................................. 7

### STATUTES

Wyo. Stat. Ann. § 34-14-201 ........................................................................................................ 6
Wyo. Stat. Ann. § 34-14-205 .............................................................................................. 6, 7, 10
Wyo. Stat. Ann. § 34-14-208 ...................................................................................................... 11

### RULES

Fed. R. Civ. P. 56 .......................................................................................................................... 5

I.  **INTRODUCTION**

Plaintiff Wealthy, Inc. ("Plaintiff," or "Wealthy"), through counsel, moves for summary judgment on its second claim for fraudulent transfer. Mr. Mulvehill and his solely-owned company JAL formed OL, the defendant in this case, when Mr. Mulvehill learned that he and JAL could be sued for defamation and false advertising. Shortly after OL's formation, Mr. Mulvehill moved the operations and assets from JAL into OL, and now conducts what was formerly the business of JAL through OL. Plaintiff currently has claims for defamation and false advertising against Mr. Mulvehill and JAL that are pending in Nevada. OL has consistently maintained that it cannot be found liable for actions that pre-dated its formation. The transfer of substantially all of JAL's operations and assets into OL will therefore effectively frustrate Plaintiff's efforts to collect on its claims in the Nevada litigation. Mr. Mulvehill's movement of the operations and assets from JAL into OL bears multiple badges of fraud demonstrating that it was a fraudulent transfer. Plaintiff seeks summary judgment on the fraudulent transfer claim, and requests this court enjoin further transfer of assets from OL while Plaintiff's claims against Mr. Mulvehill, JAL, and OL are being litigated.

II.  **STATEMENT OF FACTS**

The following facts are not in dispute and support granting summary judgment in Plaintiff's favor on the fraudulent transfer claim:

1. John Mulvehill is a dating and self-improvement coach who goes by the name John Anthony. Mr. Mulvehill resides in Brazil. (Complaint, ECF No. 1 at ¶6, 54; Answer, ECF No. 43 at ¶6, 54).

2. Mr. Mulvehill marketed his services through a company called John Anthony Lifestyle LLC ("JAL"). (ECF No. 1 at ¶54; ECF No. 43 at ¶54).

3. Mr. Mulvehill created three websites that were initially operated by JAL:

   - YouTube Channel called John Anthony Lifestyle, available at https://www.youtube.com/@JohnAnthonyLifestyle ("JAL YouTube Channel").
   - Website with URL: "platinumdatingsystem.com" ("PDS Website").
   - Website with URL: "johnanthonylifestyle.com" ("JAL Website").

   (ECF No. 1 at ¶24; ECF No. 43 at ¶24).

4. Plaintiff and its owner Dale Buczkowski filed a lawsuit in June 2021 against Mr. Cornelia in Nevada District Court because of statements Mr. Cornelia and Mr. Mulvehill made in the YouTube videos alleging Unfair Competition and False Advertising Under The Lanham Act, Defamation, Intentional Infliction of Emotional Distress, and Business Disparagement. (Cornelia Complaint ECF No. 1, D. Nev. Case 2:21-cv-01173, ¶¶111–138).

5. The Cornelia Complaint provides background information on Mr. Mulvehill (Cornelia Complaint, ¶¶41–54), including his residence in Brazil (*Id.*, ¶43), and outlines several statements made by Mr. Mulvehill on Cornelia's YouTube videos that gave rise to the cause of action against Mr. Cornelia (*Id.*, ¶¶55–75).

6. Mr. Mulvehill became aware of the Nevada lawsuit against Mr. Cornelia ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

7. Defendant Optimized Lifestyle LLC ("OL" or Defendant) OL was formed on August 5, 2021. (ECF No. 1 at ¶21; ECF No. 43 at ¶21). Its articles of incorporation were filed with the Wyoming Secretary of State on August 5, 2021. (Ex. 2, OLWY000001-04).

8. OL's operating agreement ("Operating Agreement"), ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

█████████████████████████████████████
█████

9. The Operating Agreement ████████████████████████████
████████

10. The Operating Agreement states ████████████████████████
██████████████████████████████████████
████████████████████████████████

11. The Operating Agreement ████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████████

12. █████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
█████████████████████████████

13. Pursuant to the Operating Agreement, ████████████████
███
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████

3

14. The Operating Agreement stated ▇▇▇▇▇

15. The Operating Agreement ▇▇▇▇▇

16. ▇▇▇▇▇

17. ▇▇▇▇▇

18. ▇▇▇▇▇

4

### III.     LEGAL STANDARD

#### A.  SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1)(A)-(B). "When the moving party has carried its burden under Rule 56(c), . . . the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) (quotations and citation omitted). Conclusory and self-serving affidavits are insufficient to meet this burden. *Land O'Lakes, Inc. v. Schaefer*, 3 F. App'x 769, 771 (10th Cir. 2001) (citing *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995)).

### B. UNIFORM FRAUDULENT TRANSFER ACT

Plaintiff claims, in part, that the formation of Defendant violated the Wyoming Uniform Fraudulent Transfer Act ("UFTA"), Wyo. Stat. Ann. §§ 34-14-201 through 34-14-212. Specifically,

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (i) With actual intent to hinder, delay or defraud any creditor of the debtor; or
> >
> > (ii) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > (B) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Wyo. Stat. Ann. § 34-14-205(a).

The purpose of the UFTA is to allow a creditor the opportunity to invalidate the transfer of assets made by a debtor if the transfer has the effect of placing the assets out of reach of present and future creditors. *Land O'Lakes*, 3 F. App'x at 771-72. Wyo. Stat. Ann. § 34-14-205 lists factors, known as badges of fraud, that a court may consider in determining a debtor's actual intent. These badges of fraud are:

> (i) The transfer or obligation was to an insider;
>
> (ii) The debtor retained possession or control of the property transferred after the transfer;
>
> (iii) The transfer or obligation was disclosed or concealed;

6

>(iv) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
>(v) The transfer was of substantially all the debtor's assets;
>
>(vi) The debtor absconded;
>
>(vii) The debtor removed or concealed assets;
>
>(viii) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
>(ix) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
>(x) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
>(xi) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Wyo. Stat. Ann. § 34-14-205(b).

"A single [badge of fraud] may stamp the transaction as fraudulent, and, when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud." *Land O'Lakes*, 3 F. App'x 769, 771-72 (quoting *Payne v. Gilmore*, 382 P.2d 140, 143 (Okla. 1963)); *see also Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1339 (10th Cir. 1998) ("When one or more of these badges [listed in the UFTA] are present fraudulent intent can be inferred.").

IV.    ARGUMENT

    A. JAL FRAUDULENTLY TRANSFERRED ASSETS TO OL

JAL fraudulently transferred assets to OL shortly after Mr. Mulvehill learned that his YouTube videos may result in JAL being liable for damages to Plaintiff. The formation of OL bears multiple badges of fraud. Together, these badges of fraud show that OL was formed to

7

effectuate a fraudulent transfer. "The issue of actual fraud is commonly determined by recognized indicia, demonstrated badges of fraud, which are circumstances so frequently attending fraud; a concurrence of several will make out a strong case and be the circumstantial evidence sufficient to sustain a court's finding." *See In re Estate of Reed*, 566 P.2d 587, 591 (Wyo. 1977). Courts recognize that "[b]ecause establishing intent through direct proof is difficult, the UFTA looks to circumstantial indicia of intent commonly known as 'badges of fraud.'" *Mane FL Corp. v. Beckman*, 355 So. 3d 418 (Fla. Dist. Ct. App. 2023); *see also In re Estate of Reed*, 566 P.2d at 591 ("It is not necessary to prove a fraudulent conveyance by direct evidence, circumstantial evidence being sufficient.").

First, the transfer of any assets from JAL to OL "was to an insider" (badge i). Mr. Mulvehill is the sole owner of JAL. JAL became a 50% member of OL, with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Subsequently, JAL became the sole owner of OL, with Mr. Mulvehill being the only individual controlling both entities.

Second, Mr. Mulvehill ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and continued to run JAL's dating and lifestyle business through OL (badge ii). Indeed, one of the videos regarding Mr. Buczkowski including statements by Mr. Mulvehill that led to the Nevada lawsuit and this litigation remained on JAL's website after OL was formed. The video was only removed in February 2022 when Mr. Mulvehill received a subpoena in the Nevada lawsuit. And after the initial transfer, ▮▮▮▮▮▮▮▮▮, JAL obtained complete control over OL ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Third, transfers that demonstrate fraud were concealed (badge iii). As addressed above, OL was formed on August 5, 2021, with JAL and EM as members. In the Nevada litigation, Plaintiffs served discovery requests on November 15, 2022, and discovery was set to close on February 6, 2023. OL waited until January 6, 2023, to produce its Operating Agreement, effectively precluding

8

follow-up discovery. During this case, OL repeatedly defended against the fraudulent transfer claim by stating that OL was a joint venture between JAL and EM (see e.g., ECF No. 12-1, pp. 11, 13). On ▇▇▇▇ this defense crumbled when ▇▇▇▇▇▇▇▇▇▇ ▇▇, leaving JAL as the sole member. However, OL did not disclose this key change in ownership to Plaintiff or the Court until ▇▇▇▇ later. ▇▇▇▇▇▇▇▇▇▇▇▇, in its January 23, 2024, Motion for Sanctions, OL stated "Optimized is a joint venture between JAL and Empowered Minds." (ECF No. 23, p. 6). Months later, on October 25, 2024, OL repeated these statements to the Court during oral argument on its motion to dismiss and motion for sanctions, stating "John Anthony still exists and is, in fact, a 50 percent owner in Optimized." (Ex. 6, 10/25/2024 Tr. 13:22-23; see also 5:24-6:16 (representing OL is a joint venture between JAL and EM without disclosing EM's exit from OL)). OL only admitted the ▇▇▇▇ change in ownership ▇▇▇▇ after it happened during the December 10, 2024 Initial Pretrial Conference in this case. OL then filed an amended Corporate Disclosure Statement on January 10, 2025 (Ex. 7, 12/10/24 Tr. 5:3-9; ECF No. 48), ▇▇▇▇ after JAL became OL's sole owner. OL not only concealed the change in ownership, it affirmatively represented that EM owned 50% of OL at times when JAL was the sole owner.

Fourth, the transfer that formed OL occurred shortly after JAL became aware that it may be sued for Mr. Mulvehill's statements in videos posted on JAL's and Mr. Cornelia's YouTube channels and could incur substantial financial liability (badges iv and x). As addressed above, Mr. Mulvehill was aware that Plaintiff and its owner sued his collaborator Spencer Cornelia in Nevada in June 2021. Within weeks, Mr. Mulvehill hid JAL's assets by forming OL.

Fifth, the transfer was substantially all of JAL's assets (badge v). The Operating Agreement transferred ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

9

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

Sixth, ████████████████████████████████████████ it is more than likely that JAL became functionally insolvent after the transfer was complete (badge ix). ██████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████

Mr. Mulvehill's formation of OL bears most of the badges of fraud listed in Wyo. § 34-14-205 (badges i, ii, iii, iv, v, ix, x). Summary judgment is appropriate when several badges of fraud are present. *Land O'Lakes*, 3 F. App'x 769 (affirming grant of summary judgment that transfers were fraudulent based on presence of several badges of fraud); *Dye v. Bonar (In re Bonar)*, Nos. 2:23-bk-11181-ER, 2:23-ap-01139-ER, 2023 Bankr. LEXIS 2119 at *8-11 (Bankr. C.D. Cal. Aug. 28, 2023) (granting summary judgment that a transfer was fraudulent based on the presence of multiple badges of fraud); *Mane*, 355 So. 3d 418 (affirming summary judgment declaring a transfer void as a fraudulent transfer based on existence of seven badges of fraud); *see also In re Estate of Reed*, 566 P.2d at 591 ("The badges of fraud in the case before us constitute the circumstances to establish actual intent to hinder and delay a creditor."). The multiple badges of fraud present in this case, especially without sufficient evidence to refute them, support the conclusion that OL's formation was fraudulent and a grant summary judgment in Plaintiff's favor.

## B.  OL SHOULD BE ENJOINED FROM FURTHER TRANSFERING ASSETS

When a fraudulent transfer is established, Courts can order any of several remedies, including avoidance of the transfer, attachment, injunctions, and any other relief the circumstances require. Wyo. Stat. Ann. § 34-14-208(a). The circumstances in this case warrant an injunction to prevent OL from further transferring assets it obtained from JAL and related revenue. OL already engaged in at least one transfer during the pendency of this litigation that makes further transfers more likely: it changed ownership from 50/50 between JAL and EM to 100% JAL. OL did not disclose this transfer to Plaintiff or the Court for ▮▮▮▮▮▮▮▮ after it occurred.

The Nevada litigation against JAL and Mr. Mulvehill that triggered JAL's transfer to OL is currently on appeal before the Ninth Circuit and will continue if the Ninth Circuit decides in Plaintiff's favor. There is currently no safeguard to prevent OL (now fully controlled by Mr. Mulvehill via JAL) from further transferring assets to irreparably harm Plaintiff's ability to collect on a judgment rendered either in Nevada or Claim 1 in this case. An injunction to prevent further fraudulent transfers is appropriate. Therefore, Plaintiff requests that the Court grand summary judgment on the fraudulent transfer claim and enter an order (1) enjoining OL from transferring, conveying, assigning, encumbering, distributing, or otherwise disposing of any assets, revenue, or property interests, whether tangible or intangible, outside the ordinary course of business; (2) requiring OL to provide advance written notice to Plaintiff of any proposed transfer in the ordinary course of business that exceeds $5,000; (3) granting any other relief the Court deems proper to protect Plaintiff's ability to collect on a judgment and prevent further fraudulent transfers until the conclusion of the Nevada litigation and this case.

## V. CONCLUSION

For all the reasons set forth above, Plaintiff respectfully requests that the Court enter summary judgment in Plaintiff's favor on Claim 2, declare that the formation of OL was a fraudulent transfer, and grant the injunctive relief requested above.

Respectfully submitted: November 28, 2025.

THE FULLER & SEMERAD LAW FIRM

By: /s/ Anna Brook
Jeffrey B. Vockrodt, Esq. (*pro hac vice*)
jvockrodt@cm.law
Anna Brook, Esq. (*pro hac vice*)
abrook@cm.law
CM LAW PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, TX 75240

Ryan A. Semerad, Esq.
Wyoming State Bar No. 7-6270
242 South Grant Street
Casper, Wyoming 82601
Telephone: 307-265-3455
Facsimile: 307-265-2859
Email: semerad@thefullerlawyers.com

*Attorneys for Plaintiff Wealthy Inc.*

**CERTIFICATE OF SERVICE**

I certify that on the 28th day of November 2025, I electronically filed this instrument with the Clerk of the Court for the United States District Court for the District of Wyoming by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

                                            */s/Anna Brook*
                                            CM Law