Sean M. Larson, WSB #7-5112
HATHAWAY & KUNZ, LLP
2515 Warren Avenue, Suite 500
P.O. Box 1208
Cheyenne, WY 82003-1208
Phone: 307-634-7723
Fax: 307-634-0985
slarson@hkwyolaw.com

COUNSEL FOR OPTIMIZED LIFESTYLE LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| WEALTHY INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-CV-141-ABJ |
| | ) | |
| OPTIMIZED LIFESTYLE LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Defendant, Optimized Lifestyle LLC, ("Optimized") by and through counsel, HATHAWAY & KUNZ, LLP, hereby submits this Memorandum in Support of Motion for Summary Judgment. As fully demonstrated below, all claims asserted by Plaintiff Wealthy, Inc. ("Wealthy") fail as a matter of law because (1) Optimized did not exist at the time of the alleged publication of the twelve videos; (2) John Anthony Lifestyle, LLC controlled the twelve videos and removed the videos in February of 2022 (Optimized did not have any control over the twelve videos at any time); and (3) Wealthy cannot demonstrate a viable fraudulent transfer or successor liability theory.

The Lanham Act claim concerns only actions taken before Optimized existed (and any

alleged continuous acts are those of other parties). As such, the Lanham Act claim does not legally exist against Optimized. The Fraudulent Transfer Act claim against Optimized is focused on establishing liability against Optimized based on the liability of JAL and Mr. Mulvehill. But this claim fails as (1) JAL is not insolvent; (2) JAL has not and is not transferring assets to attempt to prevent collectability against it; and (3) Optimized is providing distributions to JAL on a regular basis for JAL's membership interest. The relationship between Optimized and JAL is standard course of conduct for an LLC and its member. Wealthy cannot demonstrate any improper transfers. Optimized demonstrates the opposite of a fraudulent transfer: transfers back into the entity which Wealthy claims is being emptied to avoid collection. Optimized and JAL have only been conducting business as usual. The Fraudulent Transfer Act claim fails against Optimized.

This case appears to have been filed as a placeholder solely in case Wealthy loses in the District of Nevada and the 9th Circuit. Wealthy brought these same claims against all the parties in Nevada. Now, Wealthy brings these claims only against Optimized in Wyoming, while appealing the claims against the more directly involved parties. Due to the pending appeal in the 9th Circuit, Wealthy requested that Optimized agree to stay the Lanham Act claim in this case, as it is concerned the 9th Circuit decision will affect its approach with this claim against Optimized. This signals that Wealthy understands the importance of its claims against JAL and John Mulvehill compared to its claims against Optimized in this case.

This motion is simple: (1) Optimized did not publish any of the alleged videos and Wealthy cannot show a dispute of material fact concerning its Lanham Act claim; and (2) Optimized is providing monetary distributions to JAL, the entity which Wealthy claims is being emptied through fraudulent transfers, which demonstrates no material dispute as to the Fraudulent Transfer Act claim. This Court should grant summary judgment in Optimized's favor.

## BACKGROUND

### The Parties

Mr. Buczkowski is the principal and sole shareholder of Plaintiff Wealthy. Mr. Mulvehill is the principal and sole member of John Anthony Lifestyle, LLC ("JAL"), a Wyoming limited liability company. *Exhibit A – Affidavit of John Mulvehill*. JAL is a member of Defendant Optimized. *Id.* Defendant Optimized was a joint venture between JAL and Empowered Mind, LLC ("EM"), also a Wyoming limited liability company, until February 8, 2024 when EM left Optimized. *Id.; Exhibit B – Affidavit of Alan Belkin.*

Wealthy only named Optimized as a Defendant in this case. [Doc. No. 1]. Wealthy did not name JAL or John Mulvehill in this case. *Id.* Wealthy's claims against JAL and Mr. Mulvehill are still pending in the District of Nevada and 9th Circuit on appeal. Wealthy made a strategic decision when the case was dismissed in the District of Nevada. It elected to appeal the claims against JAL and Mr. Mulvehill and keep those in the District of Nevada, while Wealthy elected to bring the claims against Optimized here in Wyoming. In Defendant's view, the claims against Optimized appear to be a backup plan as the claims against JAL and Mr. Mulvehill are alleged directly against those parties. The allegations against Optimized all concern indirect action, given Optimized did not even exist at the time all the videos were published. *Exhibit C – Articles of Organization for Optimized Lifestyle.* Wealthy's claims against Optimized appear to be alternative claims in the event they cannot obtain relief against JAL and Mr. Mulvehill.

### Spencer Cornelia's YouTube Channel and Two Videos

This matter centers primarily on videos posted by Spencer Cornelia in 2020 and early 2021, referred to as the "Cornelia Videos." In the Cornelia Videos, Mr. Mulvehill appeared as a guest on Spencer Cornelia's YouTube channel. *Ex. A – Mulvehill Aff.*; *Exhibit D – Affidavit of Spencer*

*Cornelia*. During these videos, Mr. Mulvehill allegedly made disparaging remarks about Dale Buczkowski. [Doc. No. 1]. These videos were published on YouTube on December 19, 2020 and February 16, 2021. *Ex. A – Mulvehill Aff.*; *Ex. D – Cornelia Aff*. Mr. Cornelia removed these videos in June 2021, more than two months before Optimized was formed as a company. *Id.* Publication of these videos and damages therefrom cannot be attributed to Optimized in any way, shape, or form.

### *JAL YouTube Channel*

The videos Mulvehill made on the John Anthony Lifestyle YouTube channel are referred to as the "JAL videos." Plaintiff specifically identifies 10 separate videos posted on the JAL YouTube channel. [Doc. No. 1].   However, only 1 videos was identified as containing "false advertising" pertaining to the Lanham Act, which Plaintiff refers to as "First JAL Video". [Doc No. 1, ¶65-77].  The First JAL Video was published on May 10, 2020. *Ex. A – Mulvehill Aff.* The remaining other nine videos were simply identified as being "critical of Plaintiff" without any other specific allegations. [Doc. No. 1, ¶84].  All 10 videos were taken down from YouTube on February 14, 2022. *Ex. A – Mulvehill Aff*. These videos were all published before Optimized existed. *Ex. C – Articles of Organization for Optimized.* Optimized does not own the intellectual property and could not have republished or continued publishing these videos. Optimized is not the entity controlling the JAL YouTube Channel. *Ex. A – Mulvehill Aff*. JAL is in control of the YouTube Channel. *Ex. A – Mulvehill Aff*. Therefore, there are no allegations against Optimized which are cognizable under law on the Lanham Act claims. Those claims are solely against JAL for publication.

### *JAL, Optimized, and John Mulvehill's Business Model*

Mr. Mulvehill is a dating expert who specializes in providing dating advice to men under the John Anthony Lifestyle brand. *Ex. A – Mulvehill Aff.* Mulvehill is the owner of JAL and operates a YouTube Channel titled "John Anthony Lifestyle" ("JAL YouTube Channel"). *Id.* This is the capacity under which Mr. Mulvehill was acting in making the videos with Mr. Cornelia. *Id.* Mr. Cornelia's videos and any of the other videos posted by Mr. Mulvehill were posted by Mr. Cornelia or JAL. *Id.* All such videos were created and published to the internet before May 13, 2021, prior to Optimized Lifestyle's creation on August 5, 2021. *Id.* Optimized did not exist at the time of the publishing of any of the videos. *Id.*

Many months before the Nevada litigation began, non-party Alan Belkin ("Belkin") became a client of JAL. *Ex. B – Belkin Aff.; Ex. A – Mulvehill Aff.* During Mr. Belkin's initial call with Mr. Mulvehill on February 22, 2021, Belkin and Mulvehill began discussing how they could join forces and combine their respective expertise to improve marketing funnels and expand the JAL business to a more comprehensive men's lifestyle brand, beyond focusing on dating advice. *Id.* Belkin's business expertise is in marketing, sales, and architecting growth strategies for businesses, including but not limited to website demand generation, conversion optimization, data analytics, leadership, and systems engineering. *Id.* He has successfully built and scaled numerous companies over the last fifteen (15) years. *Id.* Discussions continued through early and mid-2021, and on August 5, 2021, Belkin's company, Empowered Mind LLC ("EM") and Mr. Mulvehill's company, JAL, entered into a joint venture and formed Optimized Lifestyle. *Id.* Optimized was created as a joint venture between EM and JAL. *Id.* The two entities were working together to utilize their business partnership and increase the success of JAL. *Id.* After 2.5 years, JAL and EM decided to separate. *Ex. A – Mulvehill Aff.* On February 8, 2024, JAL became the sole member in

Optimized. *Id.*

Optimized continues to use intellectual property licensed to it by JAL to earn revenue, and Optimized provides distributions to its member JAL on a regular basis. *Id.* Optimized has been providing distributions to JAL before and during this litigation. *Id.* JAL intellectual property created prior to the formation of Optimized is still owned by JAL and/or Mulvehill. *Id.* This is expressly addressed in Optimized's Operating Agreement. *Id.* Optimized has not assumed any of JAL's or Mulvehill's liabilities. *Id.* Optimized does not own the domain names <johnanthonylifestyle.com> or <platinumdatingsystem.com>, or the JAL YouTube Channel. *Id.* Although formed in August 2021, Optimized did not begin conducting business until on or around November 25, 2021. *Id.*

### *The Original Litigation Filed in the U.S. District Court, District of Nevada – Still Pending in the 9th Circuit Court of Appeals*

Mr. Buczkowski ultimately filed two separate lawsuits against Mr. Cornelia and Mr. Mulvehill in the United States District Court, District of Nevada. The first case was *Wealthy, Inc. and Dale Buczkowski v. Spencer Cornelia*, Case No. 2:21-CV-1173 JCM (EJY) and the second case was *Wealthy, Inc. and Dale Buczkowski v. John Mulvehill, John Anthony Lifestyle, LLC and Optimized Lifestyle, LLC* Case No. 2:22-cv-00740-JCM-ECY. In these cases, Wealthy and Mr. Buczkowski brought claims for (1) unfair competition and false advertising under the Lanham Act, (2) defamation, (3) intentional infliction of emotional distress, and (4) business disparagement. These cases were consolidated in a single case, 2:21-CV-1173-JCM-EJY and were litigated through discovery cutoff and dispositive motions deadlines in Nevada. They were ultimately dismissed on Mr. Cornelia's motion for summary judgment and a motion to dismiss filed by John

Mulvehill, JAL, and Optimized.[1]

Optimized, Mr. Mulvehill, and JAL filed their Motion to Dismiss for lack of personal jurisdiction, which was granted on July 27, 2023 (2:21-CV-01174-JCM-EJY, ECF No. 232). This decision was appealed by Wealthy and Mr. Buczkowski to the 9th Circuit and is still pending. (Docket No. 23-16132, 9th Cir.). In the other half of the consolidated case, Mr. Cornelia filed his Motion for Summary Judgment, which was decided in Mr. Cornelia's favor on September 29, 2023. (2:21-cv-01173-JCM-EJY, Doc No. 247).

The 9th Circuit Court of Appeals has jurisdiction over both Nevada cases. The claims raised in Nevada by Wealthy against Defendants including Optimized Lifestyle are functionally identical to the claims brought in this case: (1) unfair competition and false advertising under the Lanham Act; and (2) fraudulent transfers act claim.[2]

At the very best for Plaintiff, it filed this lawsuit to have a placeholder case against one of Mr. Mulvehill's entities — the entity that was not involved in publication — just in case the 9th Circuit rules in favor of Defendants. If the case against Defendants is dismissed in Nevada, Plaintiff would likely continue with this case in Wyoming. If the case in Nevada proceeds, the Wyoming case appears completely unnecessary, unless Plaintiff is attempting to receive double

---

[1] The District of Nevada did not rule on the motion to dismiss concerning personal jurisdiction over Mr. Mulvehill, JAL, and Optimized until late in discovery in the Nevada case.

[2] On February 13, 2023 in Docket No. 21-CV-1173, Plaintiffs moved to amend their First Amended Complaint to include a claim for fraudulent transfer under Nevada law in their Second Amended Complaint.

recovery.[3]

Plaintiff Wealthy filed this Complaint ("Wyoming Complaint") against Optimized in the U.S. District Court for the District of Wyoming on August 4, 2023, just eight days after the Nevada matter was dismissed against Defendants for lack of personal jurisdiction and only three weeks before filing its notice of appeal in the Nevada action. [Doc. No. 1]. Optimized filed its Motion to Dismiss in this case on November 17, 2023. [Doc. Nos. 10, 13]. After holding a hearing, the Court denied Optimized's Motion to Dismiss, allowing the case to proceed into discovery. [Doc. No. 40].

The parties have proceeded through discovery and have agreed that discovery from Nevada can be used in this case, as the claims are functionally the same. Additionally, the parties have exchanged limited written discovery in this case. Now, Optimized moves for summary judgment on both claims raised by Wealthy in Wyoming, given they fail as a matter of law.

## STATEMENT OF UNDISPUTED FACTS
## PURSUANT TO F.R.C.P. 56.1 and Local Rule 7.1 (b)(2)(D)

1) John Anthony Lifestyle, LLC ("JAL") is a Wyoming limited liability company. John Mulvehill is the member for JAL. *Ex. A – Mulvehill Aff.*

2) JAL is a member of Defendant Optimized. JAL has been the sole member in Optimized

---

[3] The District of Nevada's dismissal was due to a lack of personal jurisdiction over JAL and Mr. Mulvehill. In the event the Nevada case is remanded and personal jurisdiction is found for JAL and Mr. Mulvehill, Wealthy will continue prosecuting its claims against those parties in Nevada. The claims in the Nevada litigation will be duplicative of the claims filed against Optimized in this case. Wealthy cannot establish separate liability against Optimized for the same publications for which it is suing JAL and Mr. Mulvehill.

since February 8, 2024. *Ex. A – Mulvehill Aff.*

3) From August 5, 2021 through February 8, 2024, JAL and Empowered Mind were members in Optimized Lifestyle. *Ex. A – Mulvehill Aff.; Ex. B – Belkin Aff.; Ex. C – Articles of Org.*

4) Months before the Nevada litigation began, non-party Alan Belkin ("Belkin") became a client of JAL. *Ex. A – Mulvehill Aff.; Ex. B – Belkin Aff.*

5) During Mr. Belkin's initial call with Mr. Mulvehill on February 22, 2021, Belkin and Mulvehill began discussing how they could join forces and combine their respective expertise to improve marketing funnels and expand the JAL business to a more comprehensive men's lifestyle brand, beyond focusing on dating advice. *Ex. A – Mulvehill Aff.; Ex. B – Belkin Aff.*

6) Belkin's business expertise is in marketing, sales, and architecting growth strategies for businesses, including but not limited to website demand generation, conversion optimization, data analytics, leadership, and systems engineering. He has successfully built and scaled numerous companies over the last fifteen (15) years. *Ex. A – Mulvehill Aff.; Ex. B – Belkin Aff.*

7) Discussions continued through early and mid-2021, and on August 5, 2021, Belkin's company, Empowered Mind LLC ("EM") and Mr. Mulvehill's company, JAL, entered into a joint venture and formed Optimized Lifestyle. *Ex. A – Mulvehill Aff.; Ex. B – Belkin Aff.; Ex. C – Articles of Org.*

8) Optimized was created as a joint venture between EM and JAL. The two entities were working together to utilize their business partnership and increase the success of JAL. *Ex. A – Mulvehill Aff.; Ex. B – Belkin Aff.; Ex. C – Articles of Org.*

9) Mr. Mulvehill appeared as a guest on Spencer Cornelia's YouTube channel. During the two

Cornelia videos, Mr. Mulvehill, acting through his company JAL, and Mr. Cornelia made remarks about Dale Buczkowski which they contend were true and accurate. *Ex. A – Mulvehill Aff.; Ex. B – Belkin Aff.*

10) The Cornelia videos were published on YouTube on December 19, 2020 and February 16, 2021. *Ex. A – Mulvehill Aff.*; *Ex. D – Cornelia Aff.*

11) Mr. Cornelia removed these videos in June 2021, more than two months before Optimized was formed as a company. *Ex. A – Mulvehill Aff.*; *Ex. D – Cornelia Aff.*; *Ex. C – Articles of Org.*

12) Optimized did not publish or republish the Cornelia videos. *Ex. A – Mulvehill Aff.*; *Ex. D – Cornelia Aff.*

13) The videos Mulvehill made on the John Anthony Lifestyle YouTube channel are referred to as the "JAL videos." *Ex. A – Mulvehill Aff.*

14) Plaintiff specifically identifies 10 separate videos posted on the JAL YouTube channel. [Doc. No. 1, ¶65-85].

15) However, only 1 of those videos was identified as containing "false advertising" pertaining to the Lanham Act, which Plaintiff refers to as "First JAL Video". [Doc. No. 1, ¶65-77].

16) The First JAL Video was published on May 10, 2020. *Ex. A – Mulvehill Aff.*

17) The remaining other 9 videos were simply identified as being "critical of Plaintiff" without any other specific allegations. [Doc. No. 1, ¶84].

18) All 10 videos were taken down from YouTube on February 14, 2022. *Ex. A – Mulvehill Aff.*

19) The JAL Videos were all published before Optimized existed. *Ex. A – Mulvehill Aff.; Ex. C – Articles of Org.*

20) Optimized is not the entity controlling the JAL YouTube Channel. *Ex. A – Mulvehill Aff.*

21) JAL is in control of the YouTube Channel. *Ex. A – Mulvehill Aff.*

22) Optimized did not publish or republish the JAL videos. *Ex. A – Mulvehill Aff.*

23) All twelve of the videos which are mentioned in the Complaint were made by John Mulvehill through John Anthony Lifestyle between May 10, 2020, and May 13, 2021. *Ex. A – Mulvehill Aff.*

24) Optimized had no part in publishing, continuing publishing, or republishing any of the Cornelia videos or the JAL videos. *Ex. A – Mulvehill Aff.*

25) Optimized Lifestyle was formed on August 5, 2021. *Ex. A – Mulvehill Aff.; Ex. C Articles of Org.*

26) Optimized Lifestyle began conducting business on or around November 25, 2021. *Ex. A – Mulvehill Aff.*

27) Optimized Lifestyle did not exist at the time the alleged defamatory statements at issue here were made or published. *Ex. A – Mulvehill Aff.; Ex. C Articles of Org.*

28) No transfer of JAL's intellectual property has occurred; ownership of JAL's intellectual property remains with JAL. *Ex. A – Mulvehill Aff.; Exhibit E – Optimized Operating Agreement – OL 6-20 (Nevada).* JAL provided an exclusive license to Optimized to use its intellectual property. This is reflected in the Optimized Operating Agreement, Section 4.6.6 Intellectual Property. *Exhibit E – Optimized Operating Agreement – OL 6-20 (Nevada).*

29) Neither JAL nor Mulvehill have executed a written transfer of intellectual property to Optimized Lifestyle. *Ex. A – Mulvehill Aff.* JAL and Optimized reflect their licensing agreement in the Optimized Operating Agreement, Section 4.6.6 Intellectual Property. *Exhibit E – Optimized Operating Agreement – OL 6-20 (Nevada).*

30) All JAL and Mulvehill intellectual property created prior to the formation of Optimized

Lifestyle is still owned by JAL and Mulvehill. *Ex. A – Mulvehill Aff.*

31) Optimized Lifestyle does not own the domain names <johnanthonylifestyle.com> or <platinumdatingsystem.com> or the John Anthony Lifestyle YouTube Channel. Mulvehill is the registrant of the domain names <johnanthonylifestyle.com> and <platinumdatingsystem.com>. *Ex. A – Mulvehill Aff.*

32) JAL did not divest itself of its revenue stream or income. JAL receives distributions from Optimized Lifestyle on a monthly basis. *Ex. A – Mulvehill Aff.*

33) No accounts receivable were transferred from JAL to Optimized Lifestyle. *Ex. A – Mulvehill Aff.*

34) Optimized Lifestyle did not assume JAL's commitments to pay JAL independent contractors. *Ex. A – Mulvehill Aff.*

35) Optimized Lifestyle did not assume any JAL customer contracts. *Ex. A – Mulvehill Aff.*

36) JAL is not insolvent. JAL's assets exceed its liabilities. *Ex. A – Mulvehill Aff.*

37) JAL has received $1,106,648.72 from Optimized since the beginning of January of 2022. *Ex. A – Mulvehill Aff.; Ex. F – Distribution Report through Feb. 2025.*

38) Optimized is conducting business as usual with JAL and continuing to provide distributions. *Ex. A – Mulvehill Aff.*

39) The formation of Optimized Lifestyle was in no way related to the lawsuit filed by Plaintiffs against Spencer Cornelia and his entities. *Ex. A – Mulvehill Aff.; Ex. B – Belkin Aff.*

40) Alan Belkin ("Belkin"), principal of Empowered Mind LLC (member Optimized Lifestyle), did not know a lawsuit had been filed against the Cornelia Defendants until in or around February 2022. *Ex. A – Mulvehill Aff.; Ex. B – Belkin Aff.*

41) Belkin did not even know who Dale Buczkowski (aka Derek Moneyberg) or Wealthy Inc. were prior to the filing of Plaintiffs' Complaint against Optimized Lifestyle on May 9, 2022. *Ex. A – Mulvehill Aff.; Ex. B – Belkin Aff.*

42) Optimized Lifestyle is not a successor to JAL, it was an LLC jointly formed to expand the breadth and increase potential earnings for both of its members, JAL and EM. *Ex. A – Mulvehill Aff.; Ex. B – Belkin Aff.*

## **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate where the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it would affect the outcome of the suit under the governing law; irrelevant factual disputes are not considered. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

This District Court has explained that "[a] dispute as to a material fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side." *Langille v. Transco, Inc.*, No. 2:12-CV-00189-ABJ, 2013 WL 6185347, at *1–2 (D. Wyo. Nov. 26, 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is deemed material if under the substantive law it is essential to the proper disposition of the claim. *Id.* (citing *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)). When considering the evidence presented by the parties, the Court must believe the evidence of the non-movant, and all justifiable inferences are to be drawn in the non-movant's favor. *Id.*

The movant bears the initial burden to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this initial burden, the movant

must support its motion with materials such as documents, electronically stored information, affidavits or declarations, depositions, answers to interrogatories, admissions, stipulations, or other materials. FED. R. CIV. P. 56 (c)(1). The nonmovant "must respond with specific facts showing the existence of a genuine factual issue to be tried." *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

## <u>ARGUMENT</u>

**I.      Wealthy's claims under the Lanham Act cannot exist against Optimized. Optimized did not exist when the actions giving rise to Wealthy's claims occurred. Optimized did not control the John Anthony Lifestyle YouTube channel or any of the videos.**

Wealthy's first claim for relief alleges that Optimized engaged in false advertising in violation of Section 43(a) of the Lanham Act, in 3 videos created or participated in by John Mulvehill between May 2020 and May 2021 containing allegedly false statements of fact concerning Wealthy and its owner, Mr. Buczkowski. Wealthy asserts these statements were used in commercial advertising or promotion and were materially deceptive to consumers in interstate commerce. Optimized strongly disagrees with these allegations.

Wealthy identifies the two categories of videos discussed above: the JAL Videos published on the John Anthony Lifestyle YouTube channel and the Cornelia Videos published on a separate YouTube channel operated by Spencer Cornelia. Wealthy alleges that each contained false statements that harmed Wealthy's competitive standing. Wealthy further claims that these statements concerned the core elements of Wealthy's brand, including its owner's business credentials, personal background, and professional integrity. Wealthy contends that Optimized

bears direct liability for this alleged false advertising but cannot demonstrate such with any actual evidence.

To prove its false advertising claim under the Lanham Act, Wealthy must demonstrate the following elements:

> To prevail on a false advertising claim, a plaintiff must show, (1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.
>
> *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir.1999) (citations omitted).

*Vincent v. Utah Plastic Surgery Soc.*, 621 F. App'x 546, 549 (10th Cir. 2015). Wealthy must demonstrate a dispute of material fact as to each of the elements directly concerning Optimized's actions. It cannot do so.[4]

Wealthy cannot show that Optimized made a material false or misleading representation of fact in connection with commercial advertising or promotion of Wealthy's product. Optimized did not publish or republish any statement concerning Wealthy. *Ex. A – Mulvehill Aff.* Wealthy cannot demonstrate a connection between the JAL YouTube channel and Optimized. *Id.* Optimized does not run the JAL YouTube channel. *Id.* JAL runs the JAL YouTube channel. *Id.* Optimized did not

---

[4] It is worth noting that Wealthy brought claims for defamation in the Nevada litigation which are extremely similar to the allegations under the Lanham Act claim. It did not bring defamation claims in this case, presumably as the statute of limitations have run on any such claims. Wealthy has instead attempted to use the federal false advertising statute to work around the defamation statute of limitations issue.

take any action to publish or republish the JAL videos. *Id.* Optimized did not exist when the 12 videos were published. *Ex. A – Mulvehill Aff.; Ex. C – Articles of Org.*

Optimized has taken no part in publishing or maintaining publication of these videos. *Ex. A – Mulvehill Aff.* In this case, it is undisputed that Optimized did not exist until August 5, 2021. *Ex. A – Mulvehill Aff.; Ex. C – Articles of Org.* These videos were all published before this date, and Optimized was not involved in any publication or republication of these videos. *Ex. A – Mulvehill Aff.;* The Cornelia videos were taken down prior to Optimized's existence. *Ex. A – Mulvehill Aff.; Ex. D – Cornelia Aff.* The JAL videos were removed in February of 2022 but Optimized had no part in continuing to publish those videos. *Ex. A – Mulvehill Aff.* Mere continued availability of the JAL videos is not republication. Wealthy cannot point to any action of republication. Wealthy has not alleged facts which can legally state a claim against Optimized for any direct liability of Optimized. It is legally and factually impossible given the date of Optimized's formation.

Liability for a corporation or limited liability company cannot attach to a company until it is formed. *See Alkanani v. Aegis Def. Servs. LLC*, 2010 WL 489543, at *1 (D.D.C. 2010) (not published) (*citing Maytag Corp. v. Navistar Int'l Transp. Corp.*, 219 F.3d 587, 589 (7th Cir.2000) (granting summary judgment on tort claims because entity did not exist at the time torts allegedly occurred)). "[A]s a matter of law, no plausible direct claim can exist for [torts] and other claims (including within those claims the allegations of direct parental control of policies and decision-making), by a corporate entity, (new) Kerr-McGee Corp., that did not exist until several years after the events at issue." *In re Tronox Inc.*, 549 B.R. 21, 29 (S.D.N.Y. 2016); *see also Onuss Ortak Nokta Uluslararasi Haberlesme Sistem Servis Bilgisayar Yazilim Danismanlik ve Dis Ticaret Limited Sirketi v. Terminal Exchange, LLC,* 2010 WL

935972, at *4 (S.D. Fla. 2010) (dismissing Amended Complaint as to LLC not in existence until after alleged unlawful conduct took place); *Tiburon Lockers, Inc. v. Fletcher*, 2016 WL 4487852, at *2 (D.N.J. 2016) (dismissing all claims against LLC that did not exist at the time of alleged unlawful conduct). Logically, it follows that an entity that does not exist cannot be liable for actions which occur when it does not exist.

Optimized did not exist at the time of the alleged acts. *Ex. A – Mulvehill Aff.; Ex. C – Articles of Org.* Optimized cannot be held liable for any alleged violations of the Lanham Act. Optimized could not have made or published any of the defamatory statements giving rise to Wealthy's claims in this case, which were all made and published before May 13, 2021, because it did not exist. *Id.* Wealthy's inability to present evidence of any publication, alteration, or republication of the JAL videos bars Wealthy's claim that Optimized is liable for the allegedly defamatory statements.

Beyond the dispositive issue of Optimized not existing at the time of the publications is the fact that Wealthy cannot demonstrate any of the other elements of the Lanham Act claim against Optimized. No evidence can be presented that Optimized was commercially advertising or promoting a product in commerce. No evidence can be presented that such commercial advertising by Optimized was likely to cause confusion or mistake as to the origin of the product or characteristics of any goods or services. And finally, Wealthy can present no evidence of specific damages caused by Optimized specifically. Optimized believes Wealthy would admit that its damages claims in this case are identical to those it is attempting to collect against JAL and/or John Mulvehill in the Nevada case.

Optimized did not exist at the time of the alleged violation of the Lanham Act. Because Wealthy cannot as a matter of law demonstrate that Optimized published false advertisement about

it, the Lanham Act claim fails. The Court should grant Optimized summary judgment on this claim.

**II.      Optimized Lifestyle is not a successor entity as a matter of law, and as such Wealthy's Lanham Act claim cannot survive on that basis.**

As we have noted, this case appears to be a placeholder case for Wealthy, filed just in case it loses its case in Nevada against JAL and Mr. Mulvehill. The existence of argument claiming Optimized is a successor entity demonstrates that this is a backup claim. For most of its existence to date, Optimized was owned by JAL and EM. *Ex. A – Mulvehill Aff.* Now, Optimized is solely owned by JAL. *Id.* Under either scenario, Wealthy does not demonstrate that Optimized is a successor entity. Wealthy attempts to use the legal theory from a buyer-seller transaction to claim that Optimized has successor liability for JAL. This is the first issue with Wealthy's argument: there was no transfer of assets from JAL to Optimized. *Id.* Therefore, there cannot be successor liability. JAL is a legitimate functioning business and Optimized is an associated entity.

Even if Wealthy can get past that hurdle, Wealthy has not demonstrated that an exception applies allowing for successor liability here. In Wyoming, the entity which is the successor does not obtain liability for the predecessor entity under the general rule.

> In the usual case, an entity "that purchases or otherwise acquires [only] the assets of [the selling entity] does not assume the debts and liabilities of the [selling entity.]" *Bud Antle, Inc. v. E. Foods, Inc.,* 758 F.2d 1451, 1456 (11th Cir. 1985) (citing *Kemos, Inc. v. Bader,* 545 F.2d 913, 915 (5th Cir. 1977)). Stated another way, subject to certain exceptions, "[t]he general rule of successor liability in the context of asset purchase agreements is that [an entity] which purchases the assets of another [entity] does not succeed to the liabilities" of the seller. *Columbia Propane, L.P. v. Wis. Gas Co.,* 261 Wis.2d 70, 661 N.W.2d 776, 784 (2003) (citations and quotations omitted). *See also, Gladstone v. Stuart Cinemas, Inc.,* 178 Vt. 104, 878 A.2d 214, 220 (2005) (in a simple sale of assets, "the purchasing corporation assumes no liabilities of the selling corporation" unless an exception applies); *Alcan Aluminum Corp. v. Elec. Metal Prods., Inc.,* 837 P.2d 282, 283 (Colo. App. 1992) (subject to certain exceptions, "a corporation which acquires the assets of another corporation does not become liable for the debts of the selling corporation").

*TEP Rocky Mountain LLC v. Rec. TJ Ranch Ltd. P'ship*, 2022 WY 105, ¶ 29, 516 P.3d 459, 470 (Wyo. 2022). There are four exceptions to this rule: "(1) the buyer expressly or impliedly agree[s] to assume such debts; or (2) the transaction amounts to a de facto merger of the buyer and seller; or (3) the buying corporation is a 'mere continuation' of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts." *Id*. (Citing *Bud Antle, Inc. v. E. Foods, Inc.,* 758 F.2d 1451, 1456 (11th Cir. 1985)). The "mere continuation" and "de facto merger" exceptions do not come into play unless the transaction was an asset-only sale. *Id*. It is important for the Court to keep in mind that the successor liability theory used applies after a sale or merger of a business, where the previous entity is functionally non-existent after the transaction. These are not the facts here, but nonetheless the theory still does not apply assuming arguendo.

There has been no sale by JAL to Optimized. *Ex. A – Mulvehill Aff.* Optimized has not agreed to assume any debts of JAL, no merger or asset sale occurred between the entities, Optimized was not a buying corporation, and the transaction was not entered into fraudulently to escape debts. *Ex. A – Mulvehill Aff.* JAL and EM formed Optimized for legitimate reasons, and Optimized continues to provide distributions to JAL, which is the opposite of attempting to escape debts. *Ex. A – Mulvehill Aff.; Ex. B – Belkin Aff.* This theory does not fit, and it does not apply. This theory is a square peg which does not fit in the round hole of this case.

Wealthy cannot present any evidence to satisfy a claim against Optimized for successor liability or any other related theory. Successor liability is not a viable theory and is a red herring. Optimized did not exist at the time of the publications, and it is not a successor company to JAL. Optimized is its own functioning business separate from JAL. As such, successor liability is not a reason for this Court to allow the Lanham Act claim to proceed forward. The Court should grant

Optimized summary judgment as successor liability does not apply.

   **III.     Wealthy's claims under the Wyoming Fraudulent Transfers Act is insufficient as a matter of law. JAL is not insolvent and Optimized has been transferring its funds to JAL, capitalizing the entity Wealthy claims is being drained of assets.**

   Wealthy's second claim for relief alleges that Optimized Lifestyle LLC is liable under the Wyoming Uniform Fraudulent Transfer Act ("UFTA"), Wyo. Stat. Ann. §§ 34-14-201 through 34-14-212. Wealthy asserts that after Mr. Mulvehill became aware of his potential liability for alleged false advertising and other torts in the Nevada litigation—particularly when his associate Spencer Cornelia was sued in June 2021—Mulvehill fraudulently created Optimized and transferred the operating business of JAL into the new entity. Wealthy alleges that this purported transfer was undertaken to hinder, delay, or defraud Plaintiffs in the Nevada action and was accomplished without adequate consideration.

   Wealthy alleges that JAL's operating business, including control of the JAL YouTube channel and related websites, was shifted to Optimized while Mr. Mulvehill retained control of these assets through his role at the new company. Wealthy contends that these alleged transfers from JAL to Optimized, combined with Mr. Mulvehill's continued operational involvement, constitute fraudulent conveyances within the meaning of the UFTA. Even though Wealthy makes these allegations, Wealthy learned in the Nevada case that JAL was not insolvent and that no assets had been transferred from JAL to Optimized. As it did during the hearing on the motion to stay, Wealthy continues to contend that JAL is draining assets into Optimized when discovery has shown Optimized has been sending distributions the opposite direction for years.

   Wealthy's Fraudulent Transfer Act claim fails as a matter of law. Wyoming's fraudulent transfer statute, Wyoming Statute § 34-14-201 et seq., protects creditors by allowing courts to

avoid a transfer to the extent necessary to satisfy a claim; it does not create a standalone tort or authorize damages against a non-debtor transferee. § 34-14-208; *Mantle v. North Star Energy & Constr. LLC*, 437 P.3d 758, 788, 2019 WY 29, ¶ 86 (Wyo. 2019). First, there was no "transfer" of an "asset" of JAL: JAL retained ownership of its brand, channels, and IP; no written assignment exists; and Optimized's use has been by authorization/permission. *Ex. A – Mulvehill Aff.; Ex. E – Optimized Operating Agreement.* With no transfer of company assets, there is nothing to avoid. Second, the undisputed record shows reasonably equivalent value and solvency: JAL continues operating and has received over $1.1 million in distributions from Optimized; JAL's liabilities do not exceed its assets; and it is current on ordinary obligations. That defeats constructive-fraud theories. Third, Wealthy cannot prove actual intent under the badges of fraud. *See Mantle*, 2019 WY 29, ¶¶ 88–89; *Breitenstine* v. Breitenstine, 2003 WY 16, ¶¶ 18–20, 62 P.3d at 592–93 (Wyo. 2003). The badges run the other way: JAL retained ownership and control; value flowed to JAL; the business relationship was planned before litigation; Mr. Cornelia's videos were removed before OL existed; and there was no rushed or secret conveyance. *Ex. A – Mulvehill Aff.; Ex. E – Optimized Operating Agreement.* Finally, the remedy Plaintiff seeks—attaching tort liability to Optimized for statements it did not make—is not available under UFTA, which limits relief to avoidance, injunction, or similar equitable orders. § 34-14-208. Summary judgment should be granted on the Fraudulent Transfer Act claim.

UFTA does not create standalone tort liability as a separate claim. "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or obligation was incurred, if the debtor made the transfer or incurred the obligation." Wyo. Stat. § 34-14-205. The Wyoming Legislature went even one step further and defined the term "claim," which is "a right to payment. . ." Wyo. Stat. § 34-14-202.

There are no current or matured debts owed by JAL to Wealthy, which affects remedies available

to a plaintiff.

> Before 2006, the Uniform Fraudulent Conveyance Act provided the statutory mechanism for preventing and setting aside conveyances made to protect property from, among other things, execution on a judgment. The Act made fraudulent conveyances unsupported by fair consideration by those who were or would be rendered insolvent, regardless of the conveyor's actual intent. It made fraudulent conveyances by those who intend to incur debt or believe they will incur debt beyond their ability to pay if the transaction is not supported by fair consideration. Wyo. Stat. § 34–14–107…
>
> The Act provides different remedies for creditors whose claims have matured and those whose claims have not. As to creditors with unmatured claims, a court could:
> (i) Restrain the defendant from disposing of his property;
> (ii) Appoint a receiver to take charge of the property;
> (iii) Set aside the conveyance or annul the obligation; or
> (iv) Make any order which the circumstances of the case may require.

Wyo. Stat. § 34–14–111(a). Creditors whose claims have matured had the following remedies

under the Act:

> (i) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or
> (ii) Disregard the conveyance and attach or levy execution upon the property conveyed.

Wyo. Stat. § 34–14–110(a). There is a difference between these claims and reasons for these

differences.

> The obvious difference between the remedies is that the creditor with an unmatured claim is entitled only to have the court set aside transfers and to take other steps to maintain the asset until the claim matures or fails. He cannot execute on the property, because he has not yet obtained a judgment. Once a judgment is obtained, the claim matures and the judgment creditor may attach and levy execution on the property conveyed. Wyo. Stat. Ann. § 34–14–110(a). The successor to the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, maintains the same distinction, although it groups the remedies into a single statutory section. *See* Wyo. Stat. Ann. § 34–14–208.
>
> From this it follows that the property sought to be executed against must be subject to execution; *i.e.,* it must be shown that it belonged to the fraudulent transferor before the transfer. There are judicially created exceptions to the Act. In order for

a conveyance to be fraudulent, it must transfer property which was or would have been subject to execution if it had not been transferred. *Lending Textile, Inc. v. All Purpose Accessories,* 174 Misc.2d 318, 664 N.Y.S.2d 979, 981 (N.Y.Sup.App.Term 1997) (per curiam); *Marine Midland Bank v. Murkoff,* 120 A.D.2d 122, 508 N.Y.S.2d 17, 23 (1986); *see* Wyo. Stat. Ann. § 34–14–102(a)(i) (LexisNexis 2005) (" 'Assets' of a debtor means property not exempt from liability for his debts."); *see also Hamilton Nat'l Bank v. Halsted,* 134 N.Y. 520, 31 N.E. 900, 901 (N.Y.Ct.App.1892) (decided under common law preceding New York's adoption of the Uniform Fraudulent Conveyance Act).

*Baker v. Speaks*, 2013 WY 24, ¶¶ 38-42, 395 P.3d 847, 856-57 (Wyo. 2013). Because there is no mature or current debt owed by Optimized for the benefit of Wealthy, as the Wyoming Supreme Court has detailed in *Baker*, even under Wyoming's UFTA, Plaintiff's only remedies available would be to (1) restrain the defendant from disposing of his property; (2) appoint a receiver to take charge of the property; (3) set aside the conveyance or annul the obligation; or (4) make any order which the circumstances of the case may require. *Id*. What the Court is not allowed to do under the statute is attach tort liability to a joint venture or sister company based upon allegations against a related entity. Wealthy's claim is pled as a separate tort claim and not as specific relief, which is improper. Wealthy is attempting to pursue the Fraudulent Transfer Act claim as a standalone tort, and it is not one.

Beyond this technical issue of how Wealthy has pled the claim are two fatal flaws: (1) JAL is not insolvent; and (2) Optimized is providing distributions to JAL on a regular basis, which is the opposite of an alleged fraudulent transfer. *Ex. A – Mulvehill Aff.* These issues are dispositive of this claim. UFTA was enacted to assist creditors in collecting when there is improper gamesmanship by an entity they are collecting against.

The UFTA's purpose is to protect unsecured creditors from debtor transfers designed to frustrate debt-collection efforts. John E. Sullivan, III, Future Creditors and Fraudulent Transfers: When a Claimant Doesn't Have a Claim, When a Transfer Isn't a Transfer, When Fraud Doesn't Stay Fraudulent, and Other Important Limits to Fraudulent Transfers Law for the Asset Protection Planner, 22 Del. J. Corp. L. 955, 962 (1997); UFTA § 1, cmt. 3. It allows creditors to avoid such

transfers to the extent necessary to satisfy the creditor's claims.

*Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 29, ¶ 86. There are quite a few considerations

for the Court when it is assessing whether a fraudulent transfer occurred.

> To avoid a transfer under Wyo. Stat. Ann. § 34-14-205(a)(i), creditors must prove
> actual fraud by clear and convincing evidence. *In re Phillips*, 379 B.R. 765, 777
> (Bankr. N.D. Ill. 2007); *In re Jackson*, 318 B.R. 5, 13 (Bankr. D. N.H. 2004).16
> The debtor's intent is the touchstone of actual fraud. *Sullivan*, supra at 963-64;
> *Roland v. United States*, 838 F.2d 1400, 1402-03 (5th Cir. 1988) ("[T]he debtor's
> intent at the time of the conveyance was the crucial element. ... Under the intent test
> ..., whether [the debtor] was solvent at the time of the transfer is not dispositive.");
> *see Breitenstine v. Breitenstine*, 2003 WY 16, ¶ 18, 62 P.3d 587, 592 (Wyo. 2003)
> (stating that "[t]he determining factor in whether a transfer is fraudulent is the
> transferor's intent at the time of the transfer) (decided under the UFCA). That said,
> because of the "virtual impossibility of proving actual fraudulent intent[,] ... this
> court and [others] have come to rely on inferences and presumptions drawn from
> the surrounding circumstances." *Breitenstine*, 2003 WY 16, ¶ 19, 62 P.3d at 592.
> Thus, insolvency and other circumstances surrounding a transaction may raise the
> inference that the transaction is fraudulent. *Id.*; *Sullivan*, supra at 963-64.

*Id.,* ¶ 88. The circumstances surrounding transfers alleged to be fraudulent are assessed through

the badges of fraud, which are:

> lack or inadequacy of consideration, close familial relationship or
> friendship among the parties, retention of possession or benefit of
> the property transferred, the financial condition of the transferor
> both before and after the transfer, the chronology of events
> surrounding the transfer, the transfer takes place during the
> pendency or threat of litigations, and hurried or secret transactions.

> *Breitenstine*, 2003 WY 16, ¶ 20, 62 P.3d at 593; see also Wyo. Stat. Ann. §§ 34-
> 14-205(b)(i)-(xi) (codifying several badges of fraud relevant to determining actual
> intent). In considering a particular case's "badges of fraud," a court should evaluate
> the totality of the circumstances, including "all indicia negativing as well as
> suggesting fraud." Sullivan, supra at 971 (quoting UFTA § 4, cmt.6).

*Id.* Here, Wealthy cannot provide evidence to demonstrate that a fraudulent transfer even could

have occurred. Wealthy has not identified any specific transfers that were not within the ordinary

course of business. JAL is not insolvent. *Ex. A – Mulvehill Aff.* And most importantly, Optimized

has distributed more than $1.1 Million to JAL during the entity's lifetime. *Ex. A – Mulvehill Aff.;*

*Ex. F – Distribution Report through Feb. 2025.* Optimized has been consistently transferring funds to JAL for years. *Ex. A – Mulvehill Aff.* Wealthy cannot establish that any intent exists to use Optimized to funnel assets away from JAL. In fact, the opposite intent is apparent. Optimized is conducting business as usual with JAL and continuing to provide distributions. *Ex. A – Mulvehill Aff.* Optimized was formed in a vacuum from the issues involved in the Nevada case, as multiple witnesses who formed Optimized attest. *Ex. A – Mulvehill Aff.; Ex. B. – Belkin Aff.* If a fraudulent intent existed, Optimized would be withholding these distributions so that JAL did not have assets to collect against. There is no demonstration of fraudulent transfers or fraudulent intent by Wealthy. The undisputed facts here demonstrate that Optimized and JAL are conducting business as usual, and Optimized is not siphoning out funds or hiding assets for JAL.

This Court should grant Optimized's summary judgment on Wealthy's Fraudulent Transfer Act claim.

## <u>CONCLUSION</u>

This case is secondary to the case before the District of Nevada and the 9th Circuit. The claims against John Mulvehill and JAL are the actual direct claims for liability under the Lanham Act. Optimized has nothing to do with the videos, the statements therein, or the publications. The Lanham Act claim concerns only actions taken before Optimized existed. As such, the Lanham Act claim cannot legally survive against Optimized.

The Fraudulent Transfer Act claim against Optimized is focused on establishing liability against Optimized based on the liability of JAL and Mr. Mulvehill, contending that JAL is hiding assets with Optimized to avoid collection. But the undisputed fact is that Optimized is providing substantial assets to JAL as distributions. JAL is not insolvent, and JAL has not and is not transferring assets to attempt to prevent collectability against it. The relationship between

Optimized and JAL is standard course of conduct for an LLC and its member. Optimized demonstrates the opposite of a fraudulent transfer: transfers back into the entity which Wealthy claims is being emptied to avoid collection. The Fraudulent Transfer Act claim cannot legally survive against Optimized.

As such, this Court should grant summary judgment in Optimized's favor.

DATED this 28th day of November, 2025.

_/s/ Sean Larson_
Sean M. Larson, Wyo. Bar #7-5112
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY  82003
Phone: (307) 634-7723
Fax: (307) 634-0985
slarson@hkwyolaw.com

COUNSEL FOR OPTIMIZED LIFESTYLE LLC

## CERTIFICATE OF SERVICE

This is to certify that on the 28th day of November, 2025, a true and correct copy of the foregoing was served upon counsel as follows:

Ryan A. Semerad                                    [  ] U.S. Mail
FULLER & SEMERAD, LLC                              [ X ] CM/ECF
242 South Grant Street                             [  ] Fax:
Casper, WY 82601                                   [  ] E-mail:
*Attorney for Plaintiff*                                        semerad@thefullerlawyers.com


Jeff B. Vockrodt, Esq.                             [  ] U.S. Mail
Anna Brook                                         [ X ] CM/ECF
CULHANE MEADOWS, PLLC                              [  ] Fax:
National Litigation Support Center                 [  ] E-mail:
13101 Preston Road, Suite 110-1510
Dallas, TX 75240
*Attorneys for Plaintiff*


                                    */s/ Lori Pallak*
                                    HATHAWAY & KUNZ, LLP