RYAN A. SEMERAD, ESQ.
Wyoming State Bar No. 7-6270
FULLER & SEMERAD, LLC
242 South Grant Street
Casper, Wyoming 82601
307-265-3455
semerad@thefullerlawyers.com

Jeffrey B. Vockrodt, Esq. (*pro hac vice*)
jvockrodt@cm.law
Anna Brook, Esq. (*pro hac vice*)
abrook@cm.law
CM LAW PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, TX 75240

*Attorneys for Plaintiff Wealthy Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

WEALTHY INC. :
:
:
         Plaintiff : CASE NO. 23-cv-00141-ABJ
:
v. :
:
:
OPTIMIZED LIFESTYLE LLC :
:
:
         Defendant :
:

## PLAINTIFF WEALTHY INC.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.   INTRODUCTION.............................................................................................. 1

II.  BACKGROUND ............................................................................................. 1

III. STATEMENT OF FACTS ................................................................................ 2

IV. ARGUMENT .................................................................................................... 9

    A.   OL'S SELF-SERVING AFFIDAVITS DO NOT CREATE A GENUINE
        DISPUTE AS TO A MATERIAL FACT.................................................9

    B.   BADGES OF FRAUD DEMONSTRATE FRAUDULENT INTENT .................11

V.  CONCLUSION ............................................................................................... 14

i

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Airflow Houston, Inc. v. Theriot*,
  849 S.W.2d 928 (Tex. App. 1993) ............................................................................ 12

*Constitution Reality, LLC v. Oltarsh*,
  309 A.D.2d 714, 766 N.Y.S.2d 425 (App. Div. 2003) ........................................... 12

*Land O'Lakes, Inc. v. Schaefer*,
  3 F. App'x 769 (10th Cir. 2001) ................................................................................ 9

*Liberty Mut. Ins. Co. v. Cincinnati Ins. Co.*,
  No. 23-CV-0172, 2024 U.S. Dist. LEXIS 211357 (D. Wyo. Oct. 2, 2024) .............. 9

*Mantle v. North Star Energy & Constr. LLC*,
  437 P.3d 758, 2019 WY 29 (Wyo. 2019) ............................................................... 11

*Murray v. City of Sapulpa*,
  45 F.3d 1417 (10th Cir. 1995) ................................................................................... 9

*Nahno-Lopez v. Houser*,
  625 F.3d 1279 (10th Cir. 2010) ................................................................................. 9

*Preferred Funding, Inc. v. Jackson*,
  185 Ore. App. 693 (Or. Ct. App. 2003) ................................................................... 12

*Skrzypczak v. Roman Catholic Diocese*,
  611 F.3d 1238 (10th Cir. 2010) ............................................................................... 10

*Stanley v. Miss. State Pilots, Inc.*,
  951 So. 2d 535 (Miss. 2006) .................................................................................... 12

*Tavery v. United States*,
  32 F.3d 1423 (10th Cir. 1994) .............................................................................. 9, 10

*Tucker v. Faith Bible Chapel Int'l*,
  36 F.4th 1021 (10th Cir. 2022) ................................................................................ 10

<u>STATUTES</u>

Wyo. Stat. § 34-14-205 ................................................................................................. 13

<u>RULES</u>

Fed. R. Civ. P. 56 ....................................................................................................... 8, 9
L. Civ. R. 7.1(b)(2)(D) .................................................................................................. 2

## I.    <u>INTRODUCTION</u>

Plaintiff Wealthy, Inc. ("Plaintiff," or "Wealthy"), through counsel, submits this reply in support of its motion for summary judgment on its second claim for fraudulent transfer. OL's opposition to Plaintiff's motion does not alter the fact that JAL transferred full control of its income-producing assets (intellectual property) and its revenues to OL without requiring royalties or any minimum distributions. At the same time, JAL's owner Mr. Mulvehill retained control of OL, permitting him to make voluntary distributions to JAL or withhold them as he sees fit. OL's "business as usual" began when Mr. Mulvehill learned of his and JAL's potential liability in the Nevada litigation and continues to permit OL to fund JAL but cut off that funding if the Nevada court finds in Plaintiff's favor. The timing of OL's formation, Mr. Mulvehill's control of OL at formation and, as later discovered, eventual 100% control provide circumstantial evidence that OL's formation was a fraudulent transfer to shelter assets from the potential liability.

## II.    <u>BACKGROUND</u>

OL's opposition to Plaintiff's motion repeats verbatim the "Background" portion of OL's brief in support of its motion for summary judgment. (compare ECF No. 76 at 3-8 with ECF No. 73 at 3-8). As stated in Plaintiff's opposition to OL's summary judgment motion, the background of this litigation has been thoroughly addressed in multiple submissions by the parties and Court orders. (ECF No. 79-1 at 1 citing ECF No. 15, 40, 61, 68, 75). Plaintiff already addressed the major errors in OL's "Background" in its opposition to OL's summary judgment motion. (ECF No. 79-1 at 1-2). Other statements in OL's "Background" section will also be addressed below as part of the response to the "Statement of Facts."

### III.   <u>STATEMENT OF FACTS</u>

OL does not provide an appropriate response to Plaintiff's statement of uncontested facts as required by the Local Rules. L. Civ. R. 7.1(b)(2)(D) requires that "Each fact in dispute must state the number of the movant's fact that is disputed…" Instead, OL simply copy/pasted the same statement of facts from its motion for summary judgment on both claims, without identifying which of the alleged facts are relevant to the fraudulent transfer claim or which facts differ from the statement in Plaintiff's motion. (compare ECF No. 76 at 9-13 with ECF No. 73 at 8-13).[1]

In response to OL's statement of facts, Plaintiff incorporates the response from its opposition to OL's motion for summary judgment (ECF No. 79-1 at 2-8). For completeness, that response is repeated below (with citations modified to exhibits submitted with this motion):

1.  Plaintiff does not dispute OL's fact No. 1.

2.  OL's documents produced in the case state that JAL has been the sole member of OL since ▉▉▉▉▉▉ (not February 8, 2024, as OL states with no citation to the documents). (See ECF No. 71-1 at 4, ¶¶17-18). However, the exact date is not material to the motion.

3.  Plaintiff does not dispute OL's fact No. 3 except for the February 8, 2024, date (see Fact 2 above).

4.  Plaintiff does not have knowledge to admit or dispute fact No. 4 but states it is not material to the motion.

---

[1] References to Ex. 1-7 are to exhibits submitted with Plaintiff's Motion for Partial Summary Judgment (ECF No. 69-71). References to Ex. 8-9 are to exhibits submitted with this reply brief.

5. Plaintiff does not have knowledge to admit or dispute fact No. 5 but states it is not material to the motion.

6. Plaintiff does not have knowledge to admit or dispute fact No. 6 but states it is not material to the motion.

7. Plaintiff does not dispute that EM and JAL formed OL on August 5, 2021. (See ECF No. 71-1 at 2, ¶¶7-8). Plaintiff does not have knowledge to admit or dispute the timing of "discussions" and OL represented it has no documents reflecting those discussions. Plaintiff states that other than the date OL was formed, OL's fact No. 7 is not material to the motion.

8. Plaintiff does not dispute OL's fact No. 8.

9. Plaintiff does not dispute that Mr. Mulvehill appeared on Mr. Cornelia's YouTube channel and made videos where they discussed Mr. Buczkowski. Plaintiff disputes that the remarks were "true and accurate."

10. Plaintiff does not dispute OL's fact No. 10, except that the second video first published on YouTube on February 19, 2021 (not February 16).

11. Plaintiff does not dispute OL's fact No. 11.

12. Plaintiff does not dispute OL's fact No. 12.

13. Plaintiff does not dispute OL's fact No. 13.

14. Plaintiff does not dispute OL's fact No. 14.

15. Plaintiff does not dispute OL's fact No. 15.

16. Plaintiff does not dispute OL's fact No. 16.

17. Plaintiff does not dispute that the Complaint states the other JAL videos were critical of Plaintiff, the remainder of the Complaint speaks for itself.

18. Plaintiff does not dispute OL's fact No. 18.

19. Plaintiff does not dispute that the JAL Videos were first published before Optimized existed.

20. Plaintiff disputes OL's fact No. 20. Pursuant to the OL Operating Agreement,



21. Plaintiff disputes OL's fact No. 21. Pursuant to the OL Operating Agreement,

22. Plaintiff disputes OL's fact No. 22. The JAL videos remained on the JAL YouTube channel until February 2022, which is after the formation of OL. Upon OL's formation, pursuant to the OL Operating Agreement,



23. Plaintiff does not dispute OL's fact No. 23.

24. Plaintiff disputes OL's fact No. 24. Pursuant to the OL Operating Agreement,

25. Plaintiff does not dispute OL's fact No. 25.

26. Plaintiff does not have knowledge to admit or dispute fact No. 26 but states it is not material to the motion as JAL's assets were transferred in August 2021 pursuant to the terms of the OL Operating Agreement.

27. Plaintiff disputes fact No. 27. OL existed since August 5, 2021. The JAL videos were available online until February 2022.

28. Plaintiff disputes fact No. 28. The OL Operating Agreement expressly states:

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████

29. Plaintiff does not dispute that the OL Operating Agreement reflects a license to OL. Plaintiff disputes that no transfer of JAL's intellectual property was executed. The OL Operating Agreement expressly states: ███████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████

30. Plaintiff disputes fact No. 30. The OL Operating Agreement expressly states:

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████

31. Plaintiff does not have knowledge to admit or dispute fact No. 31. Plaintiff avers that which of Mr. Mulvehill's entities (JAL, OL, or Mr. Mulvehill personally) owns the domain names is not material to the motion. Plaintiff further avers that the websites <johnanthonylifestyle.com> and <platinumdatingsystem.com> state "Copyright © 2025 Optimized Lifestyle LLC." (Ex. 8,[2] Websites at 19, 27). The terms of service linked from both websites also state, "This website is operated and maintained by Optimized Lifestyle LLC" and "Intellectual Property All content, branding, and materials on this site are the property of Optimized Lifestyle." The terms of service state that payments are made to OL. (Ex. 8, Websites at 28-30).

32. Plaintiff disputes that "JAL did not divest itself of its revenue stream or income." The OL Operating Agreement expressly ██████████████████████████████ ████████████████████████████ Plaintiff does not dispute that OL paid distributions to JAL but avers that ██████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ █████████████████████

---

[2] Ex. 8 comprises the home page of https://johnanthonylifestyle.com/, the home page of https://platinumdatingsystem.com/pds-home, and the terms of service page that both websites link to, https://go.johnanthonylifestyle.com/terms-of-service-9377, all last accessed on December 11, 2025.

33. Plaintiff disputes fact No. 33. The OL Operating Agreement expressly ██████████

████████████████████████████████████████████████████████████████

34. Plaintiff does not have knowledge to admit or dispute fact No. 34 but states it is not

material to the motion.

35. Plaintiff disputes fact No. 35. The OL Operating Agreement expressly ██████████

████████████████████████████████████████████████████████████████

36. Plaintiff does not have knowledge to admit or dispute fact No. 36 but avers that (1)

liability resulting from the Nevada litigation is likely to exceed JAL's assets; and (2)

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████

37. Plaintiff does not dispute that OL paid distributions to JAL but avers ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

38. Plaintiff does not dispute that OL does business with JAL and OL paid distributions to

JAL but avers ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████

39. Plaintiff disputes OL's fact No. 39. Multiple badges of fraud demonstrate the formation

of OL was a fraudulent transfer to avoid potential liability in Nevada. (See ECF No.

69-71, addressing badges of fraud at ECF No. 71-1 at 7-10 and facts at 1-4).

40. Plaintiff does not have knowledge to admit or dispute fact No. 40 but states it is not

material to the motion.

41. Plaintiff does not have knowledge to admit or dispute fact No. 41 but states it is not material to the motion.

42. Plaintiff disputes OL's fact No. 42 (which purports to characterize a legal conclusion as a fact). Multiple badges of fraud demonstrate the formation of OL was a fraudulent transfer to avoid potential liability in Nevada. (See ECF No. 69-71, addressing badges of fraud at ECF No. 71-1 at 7-10 and facts at 1-4).

OL reused the statement of facts from its own motion for summary judgment that included the Lanham Act claim. OL did not identify which of its facts relate to the UFTA claim and which facts relate to the Lanham Act claim that is not at issue in Plaintiff's motion. As a result, a number of OL's proposed facts are irrelevant here.

Under Rule 56(e) of the Federal Rules of Civil Procedure, "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

(4) issue any other appropriate order.

Here, because OL did not properly address Plaintiff's assertions of fact under Rule 56(c), this Court should provide one of the remedies under Rule 56(e). Plaintiff represents that giving OL "an opportunity" to address Plaintiff's facts under (c)(1) is inappropriate as it would reward OL for skirting its duties here. Instead, Plaintiff requests that this Court either treat its assertions of fact as "undisputed" for purposes of its motion for partial summary judgment under (c)(2) or, more directly, simply grant summary judgment on Plaintiff's fraudulent transfer claim under (c)(3). *See*

*Liberty Mut. Ins. Co. v. Cincinnati Ins. Co.*, No. 23-CV-0172, 2024 U.S. Dist. LEXIS 211357, at *17 (D. Wyo. Oct. 2, 2024) ("If a party . . . fails to properly address another party's assertion of fact..., the court may... consider the fact undisputed for purposes of the motion . . . ." (quoting *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283-84 (10th Cir. 2010)).

## IV.    ARGUMENT

### A. OL'S SELF-SERVING AFFIDAVITS DO NOT CREATE A GENUINE DISPUTE AS TO A MATERIAL FACT

Plaintiff's motion is based on facts from the OL Operating Agreement, documents effectuating EM's withdrawal from OL, and corroborating deposition testimony. The declarations submitted with OL's opposition are insufficient to create a genuine dispute as to material facts. These affidavits are not supported by admissible documents, include statements that contradict documents produced in this case and others that are not based on the declarant's personal knowledge as required by Fed. R. Civ. P. 56 (c)(4).

Conclusory and self-serving affidavits are insufficient to meet a non-movant's burden to demonstrate a genuine issue for trial. *Land O'Lakes, Inc. v. Schaefer*, 3 F. App'x 769, 771 (10th Cir. 2001) (citing *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995)). "Under Fed. R. Civ. P. 56(e), only statements 'made on personal knowledge'" are appropriate to support or oppose summary judgment—"statements of mere belief must be disregarded." *See Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994). Likewise, affidavits that "do not set forth any facts, admissible or otherwise, that a court could consider as raising a material issue of fact" and "merely parrot a general rule" before stating "the legal conclusion the court should reach" cannot defeat summary judgment. *See Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1031

(10th Cir. 2022) (quoting *Skrzypczak v. Roman Catholic Diocese*, 611 F.3d 1238, 1244 (10th Cir. 2010)).

Mr. Mulvehill's affidavit is the type of self-serving and legally conclusory declaration that does not demonstrate a genuine issue of material fact. As addressed in Plaintiff's opposition to OL's summary judgment motion (ECF No. 78-79), Mr. Mulvehill's affidavit contradicts documents produced in this case and does not cite documents in support of Mr. Mulvehill's statements. It also contains self-serving legal conclusions such as whether OL is a successor to JAL, publication and republication. A list of concerns with Mr. Mulvehill's affidavit is provided in Plaintiff's opposition to OL's summary judgment motion that relied on the same affidavit. (ECF No. 79-1 at 10-12).

Mr. Belkin's affidavit (originally submitted in the Nevada litigation and again with OL's summary judgment motion) alleges that he and Mr. Mulvehill began discussions regarding "join[ing] forces" in February 2021. But there is no support for this statement in the record. In discovery, Plaintiff requested documents relating to OL's formation, including communications between Mr. Belkin and Mr. Mulvehill starting in "early 2021." OL produced only the OL Operating Agreement and represented that it "has conducted a search and not identified any responsive documents in its possession." (Ex. 9, Response to Request 17). With Mr. Mulvehill residing in Brazil and Mr. Belkin residing in Florida, the lack of written communications between them reflecting months of planning is not credible. Mr. Belkin's mere say-so, in the face of this dearth of evidence to back that say-so up, is exactly the kind of "mere belief" and unsupported statement that cannot defeat summary judgment. *See Tavery*, 32 F.3d at 1427 n.4.

Beyond this, Mr. Belkin's statements that he was unaware of the Nevada litigation against Mr. Cornelia when forming OL are irrelevant to JAL's and Mr. Mulvehill's intent in forming OL.

Additional flaws with Mr. Belkin's affidavit are addressed in Plaintiff's opposition to OL's motion for summary judgment (ECF No. 79-1 at 13-14) and provide further reasons why Mr. Belkin's affidavit does not defeat conclusions based on the plain text of the OL Operating Agreement and other documents.

Mr. Cornelia's affidavit is irrelevant to Plaintiff's motion. (See also ECF No. 79-1 at 14). It is undisputed that Mr. Mulvehill knew that Plaintiff sued Mr. Cornelia in Nevada shortly before OL was formed.

## B. BADGES OF FRAUD DEMONSTRATE FRAUDULENT INTENT

The cases OL cites confirm that the badges of fraud are properly considered when evaluating claims under the UFTA. *Mantle*, cited by OL, explains "because of the 'virtual impossibility of proving actual fraudulent intent[,] . . . this court and [others] have come to rely on inferences and presumptions drawn from the surrounding circumstances.'" *Mantle v. North Star Energy & Constr. LLC*, 437 P.3d 758, 789, 2019 WY 29, ¶ 88 (Wyo. 2019) (internal citation omitted). The badges of fraud addressed in Plaintiff's motion (ECF No. 71-1 at 6-10) are sufficient evidence to meet Plaintiff's burden on summary judgment. Summary judgment is appropriate when several badges of fraud are present. (ECF No. 71-1 at 10 citing cases granting or affirming summary judgment of fraudulent transfer based on badges of fraud).

### A transfer occurred

OL claims that JAL did not transfer assets. (ECF No. 76 at 17-18). This contradicts the plain language of the OL Operating Agreement that granted OL ██████████████████ ████████████████████████████████████████████████████████████████ Even if the intellectual property remained registered in JAL's name, it cannot revoke the license, cannot license to others, and cannot demand a royalty fee from OL. ████████████████████

11

████████████████████████ While OL points to historic distributions to JAL, OL can turn off that spigot at any time. The OL Operating Agreement ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ In sum, a transfer did occur: JAL moved its income and income-generating assets to OL, allowing Mr. Mulvehill to control whether JAL receives any of that income as distributions from OL.

OL's statement that no "*No Transfer of Assets has Occurred on which to Assess the Badges of Fraud*" implies an improperly narrow and arbitrary view of assets subject to the UFTA when an insider retains control of a new entity through which it continues to operate its business. Courts have routinely rejected just a narrow view of assets subject to the UFTA and analogous fraudulent transfer laws. In *Constitution Reality, LLC v. Oltarsh*, the court found that lawyers' goodwill in the form of a professional reputation was fraudulently transferred when those lawyers closed their firm, Oltarsh & Oltarsh, after receiving a judgment for unpaid rent and then referred their clients to their newly formed entity Oltarsh & Associates. 309 A.D.2d 714, 766 N.Y.S.2d 425 (App. Div. 2003). Other courts addressing the issue have held that goodwill can be an asset for the purposes of the UFTA. *See Stanley v. Miss. State Pilots, Inc.*, 951 So. 2d 535, 539-40 (Miss. 2006); *Airflow Houston, Inc. v. Theriot*, 849 S.W.2d 928, 933 (Tex. App. 1993); *Preferred Funding, Inc. v. Jackson*, 185 Ore. App. 693, 698-701 (Or. Ct. App. 2003). Here, ████████████████

████████████████████████████████████████████████████████

████████████████████████████ See also Ex. 8, Website at 28-30 (terms of service for

www.johnanthonylifestyle.com stating that payments are made to OL and all content, branding, and materials on the site are OL's property).

### Plaintiff demonstrated multiple badges of fraud

OL does not address the badges of fraud in Plaintiff's motion (ECF No. 71-1 at 6-10) and codified in Wyo. Stat. § 34-14-205. Instead, OL briefly addresses the limited badges listed in *Mantle*. These badges also demonstrate fraud.

OL claims "the first badge of fraud is lack or inadequacy of consideration." (ECF No. 76 at 18). OL's formation demonstrates a lack or inadequacy of consideration. JAL granted OL an irrevocable license to its intellectual property and transferred its revenues to OL for no minimum distributions or compensation. The transfer also gave EM 50% of an entity that received the royalty-free license and JAL's revenue for ███████████. (Ex. 3, OL000007 at 2.2, 2.4). JAL received no guaranteed value for the transfer and gave 50% of the value to EM for a minimal amount.

The next badge OL addresses is the "retention of possession or benefit of the property transferred." (ECF No. 76 at 18). This too demonstrates fraud. Mr. Mulvehill gave OL an irrevocable license to JAL's intellectual property and JAL's revenues while remaining in control of the content of the intellectual property and whether JAL would receive any compensation. The OL Operating Agreement thus permitted him to stay in control while running his business through OL but shielding it from JAL's creditors.

Third, OL addresses the financial condition of the transferor. (ECF No. 76 at 18-19). Without the ability to use and monetize its intellectual property and having assigned its revenues, JAL would be reliant on voluntary distributions from OL that could decrease or stop at any time, such as if a judgment is entered against JAL in Nevada.

13

Fourth, OL addresses the chronology of the transfer, focusing on the date JAL and Mr. Mulvehill were sued in Nevada. (ECF No. 76 at 19). This is the wrong triggering event. JAL and Mr. Mulvehill became aware of their potential liability in June 2021 when Plaintiff sued Mr. Cornelia. (ECF No. 71-1 at 2; Ex. 1, Mulvehill Tr. at 143:20-145:2). OL was formed shortly thereafter on August 5, 2021.

OL's opposition refers to the relationship between JAL and OL as the ordinary or normal course of business. (ECF No. 76 at 2, 20). However, when an entity like OL is formed to hold income-producing assets and collect revenues of JAL, and voluntarily make distributions back to JAL, the ordinary course of business is a fraudulent transfer. OL states "If a fraudulent intent existed, Optimized would be withholding these distributions so that JAL did not have assets to collect against." (ECF No. 76 at 20). OL's formation allows it to do just that: cut off distributions to JAL if the Nevada litigation results in a liability to JAL.

The above and the badges of fraud addressed in Plaintiff's motion warrant summary judgment in Plaintiff's favor on the UFTA claim. The relief Plaintiff seeks is tailored to the circumstances of this case. The requested injunction will serve to protect OL's assets from further transfers while the notice requirement will permit OL to continue with "business as usual" if larger payments are necessary.

## V.    <u>CONCLUSION</u>

For all the reasons set forth above and in Plaintiff's motion (ECF No. 69-71), Plaintiff respectfully requests that the Court enter summary judgment in Plaintiff's favor on Claim 2, declare that the formation of OL was a fraudulent transfer, and grant the injunctive relief requested in the motion.

14

Respectfully submitted: December 19, 2025.


                    THE FULLER & SEMERAD LAW FIRM

                    By: */s/  Anna Brook* _____
                    Jeffrey B. Vockrodt, Esq. (*pro hac vice*)
                    jvockrodt@cm.law
                    Anna Brook, Esq. (*pro hac vice*)
                    abrook@cm.law
                    CM LAW PLLC
                    National Litigation Support Center
                    13101 Preston Road, Suite 110-1510
                    Dallas, TX 75240

                    Ryan A. Semerad, Esq.
                    Wyoming State Bar No. 7-6270
                    242 South Grant Street
                    Casper, Wyoming 82601
                    Telephone: 307-265-3455
                    Facsimile: 307-265-2859
                    Email: semerad@thefullerlawyers.com

                    *Attorneys for Plaintiff Wealthy Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 19th day of December 2025, I electronically filed this instrument with the Clerk of the Court for the United States District Court for the District of Wyoming by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/Anna Brook*
CM Law