Sean M. Larson, WSB #7-5112
HATHAWAY & KUNZ, LLP
2515 Warren Avenue, Suite 500
P.O. Box 1208
Cheyenne, WY 82003-1208
Phone: 307-634-7723
Fax: 307-634-0985
slarson@hkwyolaw.com

COUNSEL FOR OPTIMIZED LIFESTYLE LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| WEALTHY INC., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 23-CV-141-ABJ |
| ) | |
| OPTIMIZED LIFESTYLE LLC, ) | |
| ) | |
| *Defendant*. ) | |

## DEFENDANT'S REPLY IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Defendant, Optimized Lifestyle LLC, ("Optimized") by and through counsel, HATHAWAY & KUNZ, LLP, hereby submits this Reply in Support of Motion for Summary Judgment. As fully demonstrated in its briefing with its motion for summary judgment, all claims asserted by Plaintiff Wealthy, Inc. ("Wealthy") fail as a matter of law.

Wealthy's Brief in Opposition confirms that Wealthy cannot meet its burden under Rule 56 of the Federal Rules of Civil Procedure. Despite voluminous rhetoric concerning immaterial issues and non-specific facts, Wealthy offers no admissible evidence in support of a publication made by Optimized to demonstrate its Lanham Act claim. Optimized did not even exist when the allegedly false videos were first published, and Wealthy provided no evidence demonstrating that

Optimized ever published or controlled the single video at issue. Wealthy offers no admissible evidence in support of a qualifying transfer of assets from JAL to Optimized – a threshold requirement of any claim under the Uniform Fraudulent Transfer Act ("UFTA"). On the contrary, the undisputed facts show that JAL retained ownership of its intellectual property and has received over $1.1 million in distributions from Optimized. These facts are not the types of facts which meet a clear and convincing burden of proof to show an inference of constructive fraud or actual fraud. Wealthy is also asking this Court to hold Optimized liable for the acts of JAL on its successor liability theory without any evidence or law to support an extraordinary remedy. Summary judgment should be entered for Optimized on all claims.

## **WEALTHY'S BRIEF IN OPPOSITION**

This Reply addresses the points raised in Wealthy's Brief in Opposition to Defendant's Motion for Summary Judgment. Wealthy's claims made in this case do not have proper evidentiary support to survive summary judgment. Wealthy has only presented to this Court argument concerning inconsistencies in evidence which are not material to the claims. Wealthy attempts to pin liability on Optimized under the Lanham Act without providing evidence of any publication made by Optimized. There is not one piece of evidence that shows Optimized made even one publication of the videos. No evidence provides support for this claim against Optimized.

On its Fraudulent Transfer claim, Wealthy completely mischaracterizes the definition of a "license" of intellectual property to attempt to prevail on its fraudulent transfer claim. A "license" is not the transfer of ownership of intellectual property; it gives permission to use. JAL owns the intellectual property, yet Wealthy argues that the license transfers ownership. No fraudulent transfer of assets is shown. In fact, Optimized has been capitalizing Optimized, demonstrating the opposite of a fraudulent transfer. No material dispute exists on the badges of fraud given the

evidence presented. No reasonable juror could find that JAL transferred assets to Optimized with an intent to avoid potential liability when Optimized is consistently distributing funds to JAL.

*Wealthy's Red Herrings*

Wealthy makes several assertions in its Brief in Opposition which are red herrings that are not material to the claims involved.

- Wealthy asserts essentially that Optimized cannot prevail at summary judgment given the Court ruled in Wealthy's favor on the Motion to Dismiss.
    - The legal rulings within the Court's Order have relevance to the Court's decision on summary judgment, but the standard is different. Summary judgment focuses on evidence rather than what was pled. Wealthy over-promised in its Complaint and now has under-delivered with evidence to support those claims. At this junction, Plaintiff has a burden to provide evidence to support those allegations, and it cannot do so.
- Wealthy contends that because Optimized was formed in August of 2021 and the JAL videos were not taken down until February of 2022, Optimized is liable under the Lanham Act for publication during that time frame.
    - When pled, the Court took this allegation at face value in favor of Wealthy, noting that the single publication rule likely does not apply.
    - Now, at summary judgment, when hard evidence is required, Wealthy has provided no evidence of a first, second, third, fourth, or additional publications of the JAL videos by Optimized. Where is the evidence of people editing and republishing the videos? Where is the evidence of the JAL YouTube account changing hands from JAL to Optimized? There is

none. Wealthy had the opportunity to request this information from third parties like YouTube, and there is no evidence of any action to show any publication outside of the first publication by JAL.

- Wealthy claims the affidavits include statements not based on personal knowledge.
    - Yet these are only statements made by John Mulvehill about Alan Belkin, statements which he made with knowledge from knowing and working with Mr. Belkin for years.

- Wealthy claims that the affidavits contradict documents in the case, most importantly on the issue of licensee status of Optimized.
    - Wealthy mischaracterizes these statements. Mr. Mulvehill has previously stated that JAL and Optimized do not have a separate written licensing agreement. This is true. JAL and Optimized's relationship is memorialized in the Operating Agreement for Optimized. JAL is a member in Optimized. The Operating Agreement demonstrates a license was provided from JAL to Optimized. Optimized is providing distributions back to its member JAL. This is a normal business relationship.

The primary factual disputes between the parties which are evident in each party's statements of facts concern (1) whether a license is a transfer of ownership of the assets; and (2) whether any publication was made by Optimized. The parties' factual contentions have been provided in detail in Optimized's memorandum in support of summary judgment and in Wealthy's brief in opposition. Several other facts between the parties appear to be undisputed and/or immaterial.

The Brief in Opposition does not adequately address the issues raised by Optimized on summary judgment. As such, this Court should grant summary judgment to Optimized.

## **OPTIMIZED'S REPLY IN SUPPORT**

*The Lanham Act Claim Fails: No Evidence of any Subsequent Publication by Optimized.*

Wealthy's Lanham Act claim against Optimized cannot survive without proof that Optimized itself made or disseminated a false or misleading representation of fact in commerce. *See* 15 U.S.C. § 1125(a)(1). Between Wealthy's Complaint and its Brief in Opposition, Wealthy admits that only a single video which was published on the John Anthony Lifestyle YouTube channel violated the Lanham Act. [Doc No. 1, ¶65-77]. This is the only publication at issue with alleged false and misleading advertising in this case. The liability alleged against Optimized for this single video published by JAL is an argument that Optimized controlled and republished the JAL YouTube Channel video at issue. The Court has no evidence before it that Optimized controlled or republished this video. As such, Wealthy's Lanham Act claim fails.

Wealthy does not dispute that the JAL YouTube video in question was created and posted by JAL before Optimized came into existence. Optimized was formed on August 5, 2021. *Exhibit C – Articles of Organization for Optimized Lifestyle.* The video was initially published on the JAL YouTube channel prior to that date. *Ex. A – Mulvehill Aff.* Critically, however, there is no evidence that Optimized ever exercised control over the content or publication of those videos. Optimized did not author them, did not upload them, and did not host the YouTube channel on which they appeared. *Id.*

Wealthy's side theory concerning control is that Optimized "obtained an exclusive license" to JAL's content via the Operating Agreement. This is another red herring. This does not establish who was in fact controlling the YouTube Channel and what actions occurred on the YouTube channel. Wealthy has produced zero evidence (emails, directives, online activity, or otherwise)

demonstrating that Optimized managed or maintained the JAL YouTube channel during the few months of overlap of Optimized's existence and the single video's existence.

The only direct evidence on this point is Mr. Mulvehill's sworn testimony that Optimized does not run the JAL YouTube channel. Optimized is not the entity controlling the JAL YouTube Channel. *Ex. A – Mulvehill Aff*. JAL is in control of the YouTube Channel. *Ex. A – Mulvehill Aff*. Optimized has taken no part in publishing or maintaining publication of these videos. *Ex. A – Mulvehill Aff*. Wealthy derides this testimony as self-serving, but it remains uncontradicted by any concrete evidence. Wealthy could have obtained related information directly from YouTube and has not produced any such evidence. Wealthy's speculation and conjecture that Optimized "at least maintained" the videos online—simply because Mr. Mulvehill controls both JAL and Optimized—is not a substitute for proof of any specific action to demonstrate Wealthy's ability to meet its burden.

> "For there to be a 'genuine' dispute of fact, 'there must be more than a mere scintilla of evidence,'" and summary judgment is properly granted "if the evidence is merely colorable or is not significantly probative." *Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1259 (10th Cir. 2020) (quoting *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993)). And while we draw all reasonable inferences in favor of the non-moving party, "an inference is unreasonable ***if it requires 'a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility.'***"
>
> *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin.*, N.A., 858 F.3d 1324, 1334 (10th Cir. 2017) (alteration in original) (emphases added) (quoting *United States v. Bowen*, 527 F.3d 1065, 1076 (10th Cir. 2008)).

*GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022) (emphasis added). This Court would need to unreasonably infer several facts to find that Wealthy met its burden at summary judgment on the Lanham Act claim.

Unable to show that Optimized did anything to publish or advertise the offending videos, Wealthy leans on one last backup argument: false advertising is a continuous tort, and Wyoming has not adopted the single-publication rule. Using this theory, Wealthy contends that the mere continued availability of the videos after Optimized's formation renders Optimized liable. This theory misstates the law as the precedent cited does not even suggest that a new corporate entity is liable for defamatory (or false advertising) statements originally made by another corporate entity, just because those statements remain accessible. Wyoming law does not currently recognize a blanket single-publication rule for defamation, meaning each publication can potentially be a new offense (thus an original publisher might be liable for separate publications of the same statements). But that principle does not mean a distinct entity can be held liable for a publication it did not make. Even if continued availability could constitute a new publication, liability still attaches only to the entity that made the publication—something Wealthy has not shown Optimized ever did. The concept of a continuous tort may be helpful to allow Plaintiff to claim that JAL continued to violate the Lanham Act each day the videos stayed up, but it provides no legal basis to connect any dots to Optimized.

Optimized had no separate YouTube channel of its own disseminating those statements, nor did it control or republish the single video. In effect, Wealthy is attempting to use an alter-ego or successor-liability theory without satisfying any of the requirements for such a theory. As discussed below, the law does not recognize Optimized as JAL's successor under these facts – and certainly not for purposes of tort liability like a Lanham Act claim. Because Optimized neither published, republished, nor controlled the allegedly false statements in the single video and Wealthy fails to raise a triable issue that Optimized caused any Lanham Act violation, summary judgment should be entered on the Lanham Act claim.

*The Fraudulent Transfer Act Claim Fails: Licensing is not Transferring Assets*

As discussed in the prior briefing submitted by Optimized, Optimized uses intellectual property licensed to it by JAL to earn revenue and Optimized provides distributions to its member JAL on a regular basis. *Ex. A – Mulvehill Aff.*; *Ex. E – Optimized Operating Agreement; Ex. F – Distribution Report through Feb. 2025*.  The pertinent language is as follows:

> 4.6.6 Intellectual Property: JM will also transfer JAL's intellectual property of JAL including without limitation videos, images, online marketing content, copyrights and trademarks products of JAL including without limitation Platinum Dating System Occam's Razor, Leads Machine, Corona Pickup, Coaching, and Group Coaching to Company in the form of an exclusive, perpetual, royalty free, irrevocable, unconditional, license for the territory of the universe, or by assignment as agreed by the Members. Any new Intellectual Property created from the formation date of the Company will be wholly owned by the Company.

*Ex. E – Optimized Operating Agreement*, p.5. The language used states that JM "will also transfer… JAL's intellectual property … in the form of an exclusive, perpetual, royalty free, irrevocable, unconditional, license for the territory of the universe, or by assignment. . . ."

What does this language mean? Does this language transfer fee ownership from JAL to Optimized? No, it does not. The Court has evidence of the intent of this language from Mr. Mulvehill and the affidavit from Mr. Belkin provides color as well. *Exhibit A –Mulvehill Aff.; Exhibit B –Belkin Aff.* In addition, it is key to notice that there is an option to transfer by license or "by assignment" in the Operating Agreement. Assignment would be the transfer of ownership. A license is only a permission to use.

> Black's Law Dictionary (8th ed.2004), for instance, defines license as "[a] permission, usually revocable, to commit some act that would otherwise be unlawful" or the "document evidencing such permission."

*SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1220 (10th Cir. 2009). "A license is the authority to do certain acts on land without possessing any interest . . . ." *Harber v. Jensen*, 2004 WY 104, ¶

10, 97 P.3d 57, 60 (Wyo. 2004) (involving a license in land but nonetheless applicable in assessing the definition under Wyoming law). An irrevocable license is permission to use in perpetuity. *Id.* ¶ 13. JAL granted Optimized permission to use the intellectual property of JAL from October 2021 moving forward. *Ex. E – Optimized Operating Agreement*, p.5. Optimized always has permission to use, but it does not have any ownership right. The ownership of the JAL intellectual property remains with JAL.

Wealthy's argument throughout its briefing is that JAL transferred fee simple ownership of the intellectual property from JAL to Optimized. The documents and testimony in this case demonstrate otherwise. JAL has provided a license which gives Optimized permission to use its intellectual property. Wealthy has provided no evidence to the contrary. As such, summary judgment is warranted in Optimized's favor on this claim.

*Successor Liability Does Not Fit This Case*

Wealthy claims Optimized is liable as a successor entity, which demonstrates this is a backup claim. Wealthy does not need the backup claim if JAL is liable. The 9th Circuit case may send the case back down to the District of Nevada to determine whether JAL is liable. If JAL is liable, this claim has no worth. JAL is not insolvent. *Ex. A – Mulvehill Aff.* JAL is an ongoing business. *Ex. A – Mulvehill Aff.* This theory does not apply to this case.

Wealthy has not met its burden to demonstrate that Optimized is a successor entity. Wealthy attempts to use the legal theory from a buyer-seller transaction to claim that Optimized has successor liability for JAL. Wealthy has not demonstrated that any exception applies allowing for successor liability here. First, there is no predecessor entity as both businesses are still conducting business. Second, even assuming Optimized is a successor entity, the entity which is the successor does not obtain liability for the predecessor entity under the general rule. *TEP Rocky*

*Mountain LLC v. Rec. TJ Ranch Ltd. P'ship*, 2022 WY 105, ¶ 29, 516 P.3d 459, 470 (Wyo. 2022). There are four exceptions to this rule: "(1) the buyer expressly or impliedly agree[s] to assume such debts; or (2) the transaction amounts to a de facto merger of the buyer and seller; or (3) the buying corporation is a 'mere continuation' of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts." *Id*. (Citing *Bud Antle, Inc. v. E. Foods, Inc.,* 758 F.2d 1451, 1456 (11th Cir. 1985)). Wealthy did not produce any evidence demonstrating that any of these exceptions apply.

There has been no sale by JAL to Optimized. *Ex. A – Mulvehill Aff.* Optimized has not agreed to assume any debts of JAL, no merger or asset sale occurred between the entities, Optimized was not a buying corporation, and the transaction was not entered into fraudulently to escape debts. *Ex. A – Mulvehill Aff.* JAL and EM formed Optimized for legitimate reasons, and Optimized continues to provide distributions to JAL, which is the opposite of attempting to escape debts. *Ex. A – Mulvehill Aff.; Ex. B – Belkin Aff.* This theory does not fit, and it does not apply. This theory is a square peg which does not fit in the round hole of this case. The Court should grant Optimized summary judgment as successor liability does not apply.

## CONCLUSION

Wealthy has failed to carry its burden to designate specific facts showing a genuine issue of material fact for trial on either of its two causes of action as required under Rule 56 of the Federal Rules of Civil Procedure. The record instead establishes that Optimized is entitled to judgment as a matter of law. As to the Lanham Act claim, Optimized's non-involvement in the alleged false advertising is irrefutable—Optimized did not exist at the time of initial publication and took no action to publish or perpetuate the statements thereafter. Wealthy provides no evidence of a publication by Optimized.

With respect to Wealthy's Fraudulent Transfer claim, Wealthy cannot point to any "transfer" of assets from JAL to Optimized that would trigger the statute – JAL retained ownership of its intellectual property and, in fact, gained fair and reasonable value through its relationship with Optimized. All evidence indicates there was no intent to hinder or delay creditors; if anything, Optimized's formation and operations strengthened JAL's financial position, as shown by over $1.1 million flowing to JAL. Plaintiff's theory of vicarious or successor liability finds no support in the law or facts as this claim just does not apply to these facts: there was no sale or merger and both entities are still in business.

Because Plaintiff cannot establish a genuine dispute of material fact on elements of the claims, the Court should grant summary judgment in favor of Defendant Optimized Lifestyle LLC on all claims. Judgment should be entered dismissing Wealthy's complaint against Optimized in its entirety and declaring that Optimized is not liable under either the Lanham Act or UFTA.

DATED this 19th day of December, 2025.

 /s/ Sean Larson
Sean M. Larson, Wyo. Bar #7-5112
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY  82003
Phone: (307) 634-7723
Fax: (307) 634-0985
slarson@hkwyolaw.com

COUNSEL FOR OPTIMIZED LIFESTYLE LLC

**CERTIFICATE OF SERVICE**

      This is to certify that on the 19th day of December, 2025, a true and correct copy of the foregoing was served upon counsel as follows:

| | |
|---|---|
| Ryan A. Semerad<br>FULLER & SEMERAD, LLC<br>242 South Grant Street<br>Casper, WY 82601<br>*Attorney for Plaintiff* | [   ] U.S. Mail<br>[ X ] CM/ECF<br>[   ] Fax:<br>[   ] E-mail: |
| Jeff B. Vockrodt, Esq.<br>Anna Brook<br>CULHANE MEADOWS, PLLC<br>National Litigation Support Center<br>13101 Preston Road, Suite 110-1510<br>Dallas, TX 75240<br>*Attorneys for Plaintiff* | [   ] U.S. Mail<br>[ X ] CM/ECF<br>[   ] Fax:<br>[   ] E-mail: |

                                                                       */s/ Melissa Underhill*
                                                                       HATHAWAY & KUNZ, LLP