**FILED**



**8:12 am, 2/26/26**

**Margaret Botkins
Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

WEALTHY INC,

      Plaintiff,

  VS.

OPTIMIZED LIFESTYLE, LLC,

      Defendant,

Case No.  23-CV-141-ABJ

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND STAYING CASE

---

This matter is before the Court on Plaintiff Wealthy Inc.'s Motion for Partial Summary Judgment (ECF No. 69) and Defendant Optimized Lifestyle, LLC's Motion for Summary Judgment (ECF No. 72). The Court has reviewed the filings, responses, and replies, and is informed in the premises. On February 6, 2026, the Parties filed a Stipulated Motion to Stay Case pending resolution of a related lawsuit in the United States District Court for the District of Nevada. (ECF No. 94). The Court finds a complete stay of the case is not necessary. Optimized violated the Wyoming Uniform Fraudulent Transfer Act and should be enjoined from further transferring assets. Therefore, Wealthy's motion for partial

summary judgment is GRANTED. The Court will stay Wealthy's remaining Lanham Act claim until the Nevada litigation concludes.[1]

## BACKGROUND

Plaintiff Wealthy, Inc. ("Wealthy") is an "entrepreneurship, finance, business, real-estate and self-improvement" company marketed towards men. (ECF No. 1 at 5). Wealthy is owned by Dale Buczkowski, who operates the business under the federally trademarked alias "Derek Moneyberg." (*Id.* at 7). Defendant Optimized Lifestyle LLC ("Optimized") is a company focused on teaching "dating and lifestyle concepts aimed at men." (*Id.* at 9). Optimized manages the business of John Anthony Lifestyle, LLC ("JAL"), which is owned by John Mulvehill. (ECF No. 59 at 1). When Wealthy initially filed this action, Optimized was a joint venture between JAL and Empowered Mind LLC, owned by a nonparty Alan Belkin. (*See* ECF No. 1). At the Initial Pretrial Conference in December 2024, Wealthy informed the Court that Empowered Mind had since left the joint venture. (IPT Tr. 4:4-12, Dec. 10, 2024). As a result, JAL is now the sole member of Optimized, with John Mulvehill being the sole owner of JAL.

The dispute between the parties stems from videos Mulvehill published between May 2020 and May 2021 on his YouTube channel and the YouTube channel of a third

---

[1] On January 13, 2025, the Court required the Parties to show cause as to why this matter should not be transferred to the District Court for the District of Nevada. (ECF No. 88). Wealthy's response indicated it did not believe the District of Nevada had personal jurisdiction over Optimized and it would only agree to a transfer if Optimized conceded personal jurisdiction. (ECF No. 89). While Optimized appeared in support of a transfer, it would not concede personal jurisdiction in the District of Nevada. (ECF No. 90). The Court will not transfer the case and instead rules on the Parties' cross motions for summary judgment.

man, Spencer Cornelia, criticizing Buczkowski and his business. (ECF No. 1, ¶ 65). In June 2021, Wealthy and Buczkowski jointly filed suit against Cornelia, Mulvehill, JAL, and Optimized in the Federal District Court for the District of Nevada (the "Nevada litigation"). (*Id.* at 2). In that case, Wealthy and Buczkowski alleged (1) unfair competition and false advertising under the Lanham Act, (2) defamation, (3) intentional infliction of emotional distress, and (4) business disparagement. (*Id.* at 2; ECF No. 61 at 3–4). The Nevada District Court ultimately granted summary judgment for Cornelia and dismissed the claims against Mulvehill, JAL, and Optimized for lack of personal jurisdiction. (ECF No. 61 at 3). Wealthy and Buczkowski appealed the district court's decision to the Ninth Circuit only with respect to Cornelia, JAL, and Mulvehill. The Ninth Circuit reversed and remanded, finding the Nevada district court has personal jurisdiction over JAL and Mulvehill. (ECF No. 85, Ex. 1). Therefore, Wealthy's claims against JAL and Mulvehill will proceed in Nevada.

On August 4, 2023, Wealthy subsequently filed suit in this Court against Optimized, without listing Buczkowski as a co-plaintiff. (ECF No. 1). Wealthy alleges (1) unfair competition and false advertising under the Lanham Act and (2) violation of Wyoming's Uniform Fraudulent Transfer Act ("UFTA"). (ECF No. 61 at 3). Specifically, Wealthy argues Optimized violated the Lanham Act's prohibition against false advertising directly from the time it began operating the JAL YouTube Channel in August 2021 until the videos were taken down in February 2022. (ECF No. 1, ¶¶ 141–51). Wealthy also alleges Mulvehill transferred assets from JAL to Optimized with actual intent to hinder Wealthy's

claims for defamation and false advertising that were evident when the Nevada litigation began. (*Id.*, ¶ 152).

On November 28, 2025, Wealthy moved for partial summary judgment, requesting the Court find in favor of Wealthy on its fraudulent transfer claim. (ECF No. 69). On the same day, Optimized moved for summary judgment, requesting the Court find in favor of Optimized on both the Lanham Act claim and fraudulent transfer claim. (ECF No. 72).

## STANDARD OF REVIEW

A court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). A fact is material if it could affect the outcome of the lawsuit and is "essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001); *see also Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017). "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Dewitt*, 845 F.3d at 1306 (quotation marks and citation omitted).

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1)(A)-(B). To avoid summary judgment, the nonmoving party "must produce specific facts showing that

there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir. 1988) (quotation marks and citations omitted). "Mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996).

In determining whether summary judgment is appropriate, the Court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1269 (10th Cir. 2011). In this case, both Parties have moved for summary judgment on Wealthy's fraudulent transfer claim. Cross-motions for summary judgment must be viewed separately, and the denial of one does not require the granting of the other. *United States v. Supreme Court of N.M.*, 39 F.3d 888, 906–07 (10th Cir. 2016) (citations omitted).

## ANALYSIS

### Fraudulent Transfer Claim

Wealthy's fraudulent transfer claim arises from the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Accordingly, the Court applies the substantive law of Wyoming as the forum state. *See Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014). In Wyoming, fraudulent transfer claims are governed by the Uniform Fraudulent Transfer Act ("UFTA"), Wyo. Stat. Ann. § 34-14-204 through § 34-14-212. Relevant to Wealthy's motion, the UFTA provides as follows:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was

made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

> (i) With actual intent to hinder, delay or defraud any creditor of the debtor

Wyo. Stat. Ann. § 34-14-205(a)(i). The UFTA defines this type of transfer as "actual fraud." *Mantle v. N. Star Energy & Constr. LLC*, 437 P.3d 758, 788 (Wyo. 2019) (internal citations omitted). To avoid a transfer under § 205(a)(i), a creditor must prove the debtor committed actual fraud by clear and convincing evidence. *Id.* (citing *In re Phillips*, 379 B.R. 765, 777 (Bankr. N.D. Ill. 2007); *In re Jackson*, 318 B.R. 5, 13 (Bankr. D. N.H. 2004)). "The debtor's intent is the touchstone of actual fraud." *Mantle*, 437 P.3d at 788–89 (internal citations omitted).[2]

Here, Wealthy claims Optimized transferred assets away from JAL with the intent to hinder Wealthy (as a future creditor) from collecting on any potential judgment awarded in the Nevada litigation. (ECF No. 71 at 7). As a preliminary matter, Optimized asserts there was no "transfer" of "assets" because JAL merely granted Optimized a license to use

---

[2] In addition to actual fraud under § 205(a)(i), The UFTA also addresses constructive fraud under § 205(a)(ii). Absent actual intent, a transfer may still be avoided as constructively fraudulent if the debtor does not receive reasonably equivalent value in exchange for the transfer and the debtor:

> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (B) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Wyo. Stat. Ann. § 206(a)(ii). In contrast to actual fraud, creditors must prove constructive fraud by a preponderance of the evidence. *Mantle*, 437 P.3d at 789. While Wealthy originally pleaded both actual and constructive fraud against Optimized, its motion for partial summary judgment only addresses Optimized committing actual fraud. (*See* ECF Nos. 1 at 31, 32; 71 at 6–10).

JAL's intellectual property and that JAL retained ownership of the intellectual property. (ECF. No. 76 at 18). After reviewing the terms of the transfer, the Court does not agree.

Under the UFTA, a transfer of assets means "every mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing of or parting with [the debtor's property] or an interest in [the debtor's property], and includes payment of money, release, lease and creation of a lien or other encumbrance." Wyo. Stat. Ann. § 34-14-202(a)(ii) and (xii). Under Optimized's operating agreement, JAL granted Optimized an "exclusive, perpetual, royalty free, irrevocable, unconditional, license" of JAL's intellectual property. (ECF No. 82, Ex. 3 at ¶ 4.6.6 [Optimized Operating Agreement]). Essentially, JAL cannot revoke the license, cannot license to others, and cannot demand a royalty fee from Optimized for its use of JAL's intellectual property. This effectively grants Optimized control and ownership of JAL's intellectual property. *See* 17 U.S.C. §§ 101 ("A 'transfer of copyright ownership' is an assignment, mortgage, [or] exclusive license . . . of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect."). Furthermore, JAL transferred all its future revenue to Optimized upon Optimized's formation. (*Id.* ¶ 4.6.5). The Court therefore finds JAL transferred ownership of its intellectual property and future revenue to Optimized.

The Court must next determine whether Optimized's transfer of JAL's assets was intended to hinder Wealthy from collecting on any potential judgment granted in the Nevada litigation. *See Mantle*, 437 P.3d at 789 ("The debtor's intent is the touchstone of actual fraud."). Since there is a "virtual impossibility of proving actual fraudulent intent," Wyoming and other courts make inferences and presumptions based on the surrounding

Page 7 of 20

circumstances of a debtor's transaction. *Mantle*, 437 P.3d at 789. The Wyoming legislature codified these circumstances into the following non-exhaustive factors, known as "badges of fraud":

(i) The transfer or obligation was to an insider;

(ii) The debtor retained possession or control of the property transferred after the transfer;

(iii) The transfer or obligation was disclosed or concealed;

(iv) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(v) The transfer was of substantially all the debtor's assets;

(vi) The debtor absconded;

(vii) The debtor removed or concealed assets;

(viii) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(ix) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(x) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(xi) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Wyo. Stat. Ann. § 34-14-205(b)(i)-(xi). The Court need not find every badge of fraud present to infer fraudulent intent, nor do the badges have to be given the same weight or consideration. *Williamson v. Auction Credit Enters., LLC (In re Arrowhead Fin. ICT, LLC)*, 2025 WL 1297110, at *7 (Bankr. D. Kan. 2025) (citing *Gould v. Liebl-Weaver (In re*

*Darter)*, 2024 WL 5152577, at *14 (Bankr. W.D. Okla. Dec. 16, 2024)).[3] "A single badge of fraud may stamp the transaction as fraudulent, and when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud." *Land O'Lakes, Inc. v. Schaefer*, 3 Fed. App'x 769, 772 (10th Cir. 2001) (cleaned up) (internal citations omitted). As laid out in the analysis below, the undisputed material facts here create the existence of seven out of eleven badges of fraud.

(i)      *The transfer or obligation was to an insider*

The first factor is whether the transfer was made to an insider. In this case, JAL, a limited liability company ("LLC"), transferred its assets to Optimized. Under the UFTA, an LLC's assets are transferred to an "insider" if the assets are transferred to a member of the LLC. Wyo. Stat. Ann. § 34-14-202(a)(vii)(F)(I). Originally, Optimized was formed by two companies: JAL and Empowered Mind. Therefore, JAL's assets were transferred equally to itself and Empowered Mind, which satisfies the insider transfer definition. Furthermore, as this Court noted earlier, Empowered Mind has not been a member of Optimized since January 19, 2024. (ECF No. 71, Ex. 4 at 2). As a result, JAL's assets are being transferred to an LLC who only has one member: JAL. Thus, JAL has continued transferring its assets to an insider. Therefore, this badge of fraud is present.

---

[3] Opinions under the bankruptcy code are persuasive authority when interpreting the UFTA. John E. Sullivan, III, *Future Creditors and Fraudulent Transfers: When a Claimant Doesn't Have a Claim, When a Transfer Isn't a Transfer, When Fraud Doesn't Stay Fraudulent, and Other Important Limits to Fraudulent Transfers Law for the Asset Protection Planner*, 22 Del. J. Corp. L. 955, 960 (1997).

*(ii)*    *Debtor retained possession or control of the property after transfer*

The second factor is whether the debtor (JAL) retained possession or control of the property after the transfer. In this case, JAL's intellectual property and future revenue were transferred to Optimized. (*See* Optimized Operating Agreement, ¶¶ 4.6.5, 4.6.6). Concerning control of future revenue, Optimized's operating agreement allowed JAL and Empowered Mind to make revenue distributions to themselves "as they see fit." (Optimized Operating Agreement, ¶ 3.2). As manager of Optimized, JAL/Mulvehill thus retained control over JAL's revenue, including the timing and amount of distributions to JAL and Empowered Mind. *See ACI Constr., LLC v. United States*, 727 F. Supp. 3d 1236, 1262 (C.D. Utah Mar. 28, 2024) (analyzing the same badge of fraud under the identical Utah Uniform Fraudulent Transfer Act and finding debtor retained control of business operations after transfer of assets to insider company).[4] Concerning control of JAL's intellectual property, Optimized admits in its motion for summary judgment that "JAL retained ownership and control[]" of its intellectual property after transferring it to Optimized. (ECF No. 73 at 21). Therefore, JAL/Mulvehill retain control of JAL's intellectual property and revenue even though those assets have been transferred to Optimized. Thus, this badge of fraud is present.

---

[4] Since one of the UFTA's purposes is to "make uniform the law with respect to fraudulent transfers among states," the interpretation of courts in other jurisdictions that have adopted the UFTA provide guidance to this Court. *Mantle*, 437 P.3d at n. 16; *see also In re Reed's Estate*, 566 P.2d 587, 589 (Wyo. 1977) (finding a California case "particularly applicable" because both Wyoming and California had adopted the Uniform Fraudulent Conveyance Act). Therefore, cases interpreting the UFTA from other jurisdictions are cited throughout this opinion.

*(iii)   The transfer was disclosed or concealed*

The third factor is whether Optimized concealed the transferring of JAL's assets from Wealthy. Wealthy argues that in the Nevada litigation, Optimized produced its operating agreement one month before discovery closed, effectively precluding Wealthy from conducting follow-up discovery regarding potential fraudulent transfers or amending its complaint in a timely fashion. (ECF Nos.71 at 9; 82 at 20). While Optimized does not appear to dispute this fact, the Court does not consider Optimized's delay an attempt to conceal transfers. Optimized complied with the request within the discovery timeframe, and there is no indication in the Nevada litigation that Wealthy and Buczkowski took any steps to address Optimized's alleged tactical delay, such as requesting an extension of discovery or filing a motion for sanctions against Optimized. *See generally* Fed. R. Civ. P. 29(b), 37.

But the Court does find a separate instance where Optimized concealed the transfer of assets, specifically with respect to changes in its company membership. On January 19, 2024, JAL become the sole member of Optimized after a Confidential Settlement Agreement and Release terminated Empowered Mind's membership from Optimized for $1. (ECF No. 71, Ex. 4). This change in ownership essentially granted JAL 100% control of Optimized and effectively JAL's assets. Yet Optimized did not disclose this change in company membership until nearly one year later during the Parties' Initial Pretrial Conference with this Court on December 10, 2024. (ECF No. 70, Ex. 7, 12/10.24 Tr. 5:3-9; *see* ECF No. 48). At least two times before December 10, 2024, Optimized represented to Wealthy and the Court that it was still a joint venture between JAL and Empowered

Mind. On January 23, 2024, Optimized filed a Motion for Sanctions, representing "Optimized is a joint venture between JAL and Empowered mind[]." (ECF No. 23 at 6). On October 25, 2024, Optimized indicated to the Court during oral argument on its motion to dismiss and motion for sanctions that "John Anthony still exists and is, in fact, a 50 percent owner in Optimized." (ECF No. 70, Ex. 6, 10/25/24 Tr. 13:22-23).

The Court finds Optimized concealed the transfer of JAL's assets by failing to disclose its change in membership for nearly one year after JAL became its sole member. Therefore, this badge of fraud is present.

### (iv)   Threat of Litigation

The fourth factor is whether JAL had been sued or threatened with suit before the transfer occurred. Wealthy and its owner, Dale Buczkowski, jointly initiated the Nevada litigation against Spencer Cornelia on June 21, 2021. Optimized was formed less than two months later, on August 5, 2021. (*See* ECF No. 70, Ex. 2). Mulvehill admitted in his deposition on behalf of JAL that he was aware of the Nevada litigation against Cornelia and in fact was surprised he was not included:

> Q: Did you – how soon after the filing of [the lawsuit between Wealthy and Cornelia] did you know about it?
>
> A [John Mulvehill]: I don't remember exactly. But I think pretty quickly because Spencer initially told me that a cease and desist was sent and that he complied, took down the videos immediately. And I assume he would have told me shortly after, so I think I knew pretty quickly.
>
> Q: Okay. What did you guys talk about in those conversations?
>
> A: I think we were confused as to why I wasn't contacted, because I made the statements that were allegedly defamatory. Yeah, there was a lot of

confusion. I think there still is confusion why I was never brought into this matter sooner. And I was never sent a cease and desist, so…

Q: Is it fair to say those conversations happened over the summer of 2021?

A: You said he was sued in which month?

Q: June 2021.

A: I believe so. Yeah – I mean, I don't think he would have kept it from me for a couple months, so I believe so.

(ECF No. 71, Ex. 2 at 4).

In response to this, Optimized provides affidavits from Mulvehill and Alan Belkin (owner of Empowered Mind) maintaining that they did not form Optimized as a response to the Nevada litigation. (*See* ECF No. 73, Ex. 1, ¶ 38; Ex. 2, ¶ 22). However, these affidavits are contradicted by the record.

As a general matter, conclusory and self-serving affidavits are not sufficient to create a genuine dispute of material fact. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). Here, Belkin and Mulvehill's affidavits claim they began discussing "join[ing] forces" in February 2021. (ECF No. 73, Ex. 1, ¶¶ 6, 7, 9; Ex. 2, ¶¶ 3, 4, 6). Yet Optimized provides no documentation supporting this assertion, including any communications Belkin and Mulvehill may have had in February 2021 about forming a company. Additionally, Mulvehill's affidavit is contradicted by the record. He claims Empowered Mind remained a member of Optimized until February 8, 2024. (ECF No. 73, Ex. 1, ¶ 5). Yet Empowered Mind was released from Optimized's membership on January 19, 2024, in accordance with the Confidential

Page 13 of 20

Settlement Agreement and Release's effective date. (*See* ECF No. 71, Ex. 4 at 1). Therefore, these affidavits do not create a genuine dispute of material fact.

The Court thus finds Mulvehill was aware of the threat of litigation against either himself or JAL prior to forming Optimized and transferring JAL's assets. Therefore, this badge of fraud is present.

### (v)   *Substantially all of the assets*

The fifth factor is whether the transfer involved substantially all of JAL's assets. In this case, Optimized's operating agreement transferred all of JAL's revenue to Optimized upon its formation: "All revenue generated by JAL will transfer to Optimized Lifestyle LLC." (Optimized Operating Agreement ¶ 4.6.5). As the Court stated above, the operating agreement also effectively transferred all of JAL's intellectual property to Optimized in the form of an exclusive, irrevocable, royalty free license. (*Id.*, ¶ 4.6.6). Therefore, this badge of fraud is present.

### (vi)   *Debtor absconded*

This sixth factor is whether JAL has absconded. JAL has not absconded; therefore, this factor does not present a badge of fraud.

### (vii)   *Debtor concealed assets*

The seventh factor is whether JAL removed or concealed assets. Here, it is undisputed that JAL did not conceal its assets. Therefore, this badge of fraud is not present.

(viii)   *Value of the consideration was reasonably equivalent to the value of the asset transferred*

The eighth factor weighs whether the value of the consideration for the transfer of assets was reasonably equivalent to the value of the asset transferred. Reasonably equivalent value is generally understood to mean "something more than the consideration necessary to support a contract but less than 'dollar-for-dollar' equivalency." *Mantle v. N. Star Energy & Constr. LLC*, 2019 WY ¶ 89, 437 P.3d 758, 789 (Wyo. 2019) (internal quotations and citations omitted).

Here, Wealthy argues JAL transferred its intellectual property and future revenues to Optimized for no minimum distributions or compensation. (ECF Nos. 79, Ex. 1 at 19; 82, Ex. 1 at 13). The transfer also gave Empowered Mind 50% control of Optimized for "a mere $5,000 contribution." (*Id.*). Wealthy thus argues Optimized received JAL's assets for little consideration.

Optimized argues it uses JAL's licensed intellectual property to generate revenue, and then sends that revenue back to JAL in the form of member distributions. (ECF No. 76 at 18). Optimized "uses the IP and JAL is compensated from revenue from the licensed IP . . . . There is a proper exchange of value . . . ." (*Id.*).

The Court disagrees with Optimized. Beyond mere argument, Optimized has not provided any admissible evidence to establish how its distributions to JAL are reasonably equivalent to the value of JAL's intellectual property and revenue. Additionally, JAL received no guaranteed value for the transfer of its assets. Optimized's operating agreement required no minimum distributions to JAL as consideration for the transfer of its assets.

Page 15 of 20

*See, e.g., ACI Constr.*, 727 F. Supp. 3d at 1262 (analyzing the same badge of fraud under UFTA and finding the value of consideration was not reasonably equivalent to the value of the assets transferred because the debtor received, at most, one dollar for each various item of construction equipment). Therefore, this badge of fraud is present.

(ix)    *Debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred*

The ninth factor is whether the debtor was insolvent or became insolvent shortly after the transfer was made or an obligation was incurred. Under the UFTA, a debtor is insolvent if the sum of the debtor's debt is greater than all of the debtor's assets. § 34-14-203(a). Here, Wealthy claims it is more than likely JAL became functionally insolvent after Optimized transferred JAL's assets, and that Optimized could stop paying JAL distributions at any time and render it insolvent. (ECF No. 71 at 10). In response, Optimized argues it has sent JAL regular distributions and that JAL has never been insolvent. (ECF No. 73 at 21). In support of this argument, Optimized provides its transaction report between January 2022 to February 2025, showing it paid distributions to JAL totaling $943,383.44. (*See* ECF No. 74, Ex. 2).

Optimized's transaction report only shows distributions to JAL beginning five months after JAL's assets were transferred. The report tells the Court nothing about JAL's solvency at the time its assets were transferred or shortly after, nor does it reveal any debts JAL may have had at the time. *See Grochocinski v. Schlossberg*, 40 B.R. 825, 837 (Bankr. N.D. Ill. Mar. 11, 2009) (affirming bankruptcy court's finding of insolvency since debtor's financial statement illustrated debtor was "balance-sheet insolvent" when asset transfer

occurred). Similarly, Wealthy makes no showing that JAL became functionally insolvent after Optimized transferred JAL's assets. The Court therefore finds a question of fact remains as to whether JAL became insolvent shortly after its assets were transferred. However, this question of fact is immaterial to the Court's holding given the existence of numerous other badges of fraud.

(x)     *Transfer occurred shortly before or shortly after a substantial debt was incurred*

The tenth factor is whether Optimized transferred assets shortly before or shortly after JAL incurred a substantial debt. Under the UFTA, a "debt" is a liability on a claim. Wyo. Stat. Ann. § 34-14-202(a)(v). A claim is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." § 34-14-202(a)(iii).

In this case, Wealthy claims this badge is present because JAL's asset transfer occurred shortly after JAL became aware that it may be sued for Mulvehill's statements and could incur substantial financial liability. (ECF No. 71 at 9). But unlike the fourth badge of fraud, which analyzes whether JAL's assets were transferred around the time it was threatened with suit, this badge of fraud concerns whether the assets were transferred around the time JAL incurred liability on a disputed claim.

Optimized transferred JAL's assets upon its formation on August 5, 2021. (*See* Optimized Operating Agreement, ¶¶ 4.6.5, 4.6.6). Wealthy's disputed right to payment against JAL began on May 9, 2022, when it filed suit against JAL in Nevada. Therefore,

nine months elapsed from the time the transfer occurred to the time JAL incurred a disputed debt.

The UFTA does not define a specific length of time for when transfers occur "shortly" before or after the debtor incurs a substantial debt. Other jurisdictions differ in their application of this factor as well. *See, e.g., Citizens State Bank Norwood Young America v. Brown*, 849 N.W. 2d 55, 65 (Minn. 2014) (finding tenth badge of fraud met because asset transfer occurred within four months of court entering default judgment against debtor); *Litzler v. Ethridge, (In re Gordon)*, No. 2-32599-HDH-7, 2004 Bankr. LEXIS 2570, at *10 (Bankr. N. Tex. Sept. 27, 2004) (finding tenth badge of fraud met because debtor transferred assets in the form of loan forgiveness ten months before settling lawsuit with creditors); *In re Thomason*, 202 B.R. 768, 773 (Bankr. D. Colo. Nov. 25, 1996) (finding tenth badge of fraud met because debtor transferred assets about ten months after his house was foreclosed and several months after he missed other mortgage payments). Since Wealthy initiated suit against JAL only nine months after Optimized transferred JAL's assets, the Court finds this badge of fraud present.

(xi) *Debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor*

The eleventh factor is whether JAL transferred its essential assets to a lienor who then transferred the assets to an insider of the debtor. JAL did not transfer the essential assets of its business to a lienor, so this factor does not apply to the case.

*Conclusion*

Given the undisputed facts, the Court finds seven out of eleven badges of fraud exist (badges one, two, three, four, five, eight, and ten). These badges show by clear and convincing evidence Optimized fraudulently transferred JAL's assets with an intent to hinder or delay Wealthy's disputed right to payment. *See In re Estate of Reed*, 587, 591 (Wyo. 1977) ("[A] concurrence of several [badges of fraud] will make out a strong case and be the circumstantial evidence sufficient to sustain a court's finding."). Wealthy's motion for summary judgment on its fraudulent transfer claim is therefore GRANTED. The Court will enjoin Optimized from transferring or conveying any asset or revenue outside the ordinary course of business.

Lanham Act Claim

Wealthy's remaining claim in this matter is false advertising in violation of the Lanham Act. On numerous occasions, Wealthy and Optimized have asked the Court to stay the Lanham Act claim until the Nevada litigation concludes. (*See* ECF No. 59, 61, 85). At this time, the Court finds Wealthy's Lanham Act claim should be stayed until the Nevada litigation concludes, given the similarities between the Lanham Act claims against JAL, Mr. Mulvehill, and Optimized. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Baca v. Berry*, 806 F.3d 1262, 1269 (10th Cir. 2015) (finding courts have broad discretion to stay proceedings incident to its power to manage its docket). The Court thus refrains from ruling on Optimized's Motion for Summary Judgment regarding Wealthy's Lanham Act claim until the Nevada litigation concludes.

## CONCLUSION

For the above reasons, the Court finds Optimized violated the Wyoming Uniform Fraudulent Transfer Act in fraudulently transferring JAL's assets with the intent to hinder Wealthy from collecting on any potential judgment in the Nevada litigation.

**IT IS ORDERED** Plaintiff Wealthy Inc.'s Partial Motion for Summary Judgment (ECF No. 69) is **GRANTED**.

**IT IS FURTHER ORDERED** Defendant Optimized Lifestyle, LLC is enjoined from transferring, conveying, assigning, encumbering, distributing, or otherwise disposing of any assets, revenue, or property interests, whether tangible or intangible, outside the ordinary course of business.

**IT IS FURTHER ORDERED** Optimized shall provide advance written notice to Wealthy of any proposed transfer of assets in the ordinary course of business that exceeds $5,000.

**IT IS FINALLY ORDERED** the Parties' Stipulated Motion to Stay Wyoming Case (ECF No. 94) is **GRANTED IN PART** and **DENIED IN PART**. The remaining issues in this case are STAYED pending the outcome of litigation in the District Court for the District of Nevada. The parties shall provide the Court with a status report in 60 days from this Order and then every 60 days after that date.

Dated this 25th day of February, 2026.

Alan B. Johnson
United States District Judge

Page 20 of 20